IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cr-00123-RDA-02 |
| | ) | |
| ELMER ZELAYA MARTINEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S POSITION ON DISPUTED RULE 12.2(b)(2) PROCEDURES

On June 19, 2020, the government and the defendant each filed their proposed procedures regarding expert mental condition evidence bearing on the issue of punishment.  Docket Entries ("DEs") 584 and 585.  The government files this memorandum to address the procedures upon which the parties have not reached a consensus and to provide further grounds supporting its proposed procedures.  The government discusses the disputed procedures in turn.

1.      The contents and timing of the defendant's notice pursuant to Rule 12.2(b)(2)

The defendant and the government agree that the defendant's initial notice pursuant to Fed. R. Crim. P. 12.2(b) must include a general summary of the topics to be addressed sufficient to apprise the government of the areas in which its own experts must be versed and the specific nature of any testing that the defense experts have administered in the course of their evaluations of the defendant.  *Compare* DE 584-1 at ¶ 1 *with* DE 585-1 at ¶ 1.  The government also proposes that the defendant provide with its notice the names and qualifications of each mental health professional that the defense intends to call as an expert witness in the penalty phase.  DE 585-1 at ¶ 1.  The defendant, however, has not included the identity or qualifications of his mental health experts as information that he must disclose or articulated any reason why his notice should not

include such basic information.  The latter failure is not surprising given that there are no legitimate grounds for withholding such information.   Providing the names and qualifications of the defendant's mental health experts certainly does not divulge any privileged information or otherwise prejudice the defendant.

The content of the defendant's Rule 12.2(b)(2) notice is critical to the government's ability to mount a meaningful rebuttal to the defendant's mental condition evidence.  There are a multitude of mental health conditions and numerous types of mental health experts with specialties in specific areas of practice and study.   Requiring the defendant to provide the names and qualifications of his mental condition experts will enable the government to identify the types of experts it will need to retain in order to rebut or confirm the defendant's mental condition evidence, and it will also ensure that the government does not inadvertently attempt to retain any of the defendant's mental health experts.  Given that the government will have a limited amount of time to conduct its own examination of the defendant, having this basic information about the defendant's experts will expedite the selection process.   Furthermore, the defendant himself acknowledges the importance of having the names and qualifications of mental health experts, as he proposes that the government be required to provide the names and qualifications of its experts even before the government has had the opportunity to examine the defendant.  *See* DE 581-1 at ¶ 2.  There simply is no good reason why the government should not have the same basic information about the defendant's experts before it retains its own experts for the purpose of evaluating the defendant's purported mental condition.  What's good for the goose is good for the gander.

Separately, the government notes that the parties might also have differing positions on the deadline for the filing of the defendant's Rule 12.2(b)(2) notice.  The defendant has not proposed a specific date upon which his Rule 12.2(b)(2) notice is due, as his proposed procedures only

2

provide for such notice "on or before a date set by the Court." DE 584-1 at ¶ 1. The government

has proposed that the defendant's Rule 12.2(b)(2) notice be filed not later than December 4, 2020,

which is six months before the scheduled trial. The timeframe proposed by the government

provides ample time to accomplish the following:

(1)     the government's retention of its own mental health expert(s);

(2)     litigation and resolution of any disputes that might arise before or during the

government's examination(s);

(3)     the examination(s) of the defendant by the government's expert(s);

(4)     the preparation of reports by the government's expert(s); and

(5)     the exchange of Rule 16 disclosures in advance of trial.

Should the Rule 12.2(b)(2) process consume less time, neither the defendant nor the government

will be prejudiced by having the expert mental condition evidence ready far in advance of trial.

On the other hand, requiring the Rule 12.2(b)(2) notice closer to the trial date could have the

unintended—and undesirable—consequence of requiring a postponement of the trial, especially if

there are disputes requiring protracted litigation over the government's examination(s) or the

sufficiency of either party's Rule 16 disclosures. Accordingly, the Court should require the

defendant to provide his notice by a date certain: December 4, 2020.

2.     The timing of the filing of the government's motion for an examination of
       the defendant

Under the defendant's proposed procedures, the government has to wait until the defendant

provides his Rule 12.2(b)(2) notice to move the Court for an order permitting the government to

have its own experts examine the defendant. As the defendant acknowledges, pursuant to Rule

12.2(c)(1)(B), the Court may, upon the government's motion, order that the defendant be examined

under procedures ordered by the court. DE 584 at 1. "[T]he key to any effective rebuttal of a

3

mental health defense depends on examination of the defendant, just as the key to presentation of an effective mental health mitigation case requires that the defendant's expert has examined the defendant." *United States v. Beckford*, 962 F. Supp. 748, 758 (E.D. Va. 1997).  Knowing this, the government has already moved the Court for authorization to conduct an examination of the defendant by a psychiatrist or other mental health professional selected by the government in the event the defendant provides such notice.  DE 585 at 12.

There is no reason to require the government to return to the Court to seek authorization to conduct an expert examination when the government has already filed such a motion and it is clear at this stage of the proceedings that the government will want to conduct its own evaluation of the defendant should he file a Rule 12.2(b)(2) notice.  Given that the defendant has not proposed a deadline for the filing of any opposition to the government's motion to conduct an independent examination, it appears that he does not envision opposing the government's motion to conduct its own evaluation.  Accordingly, requiring the government to wait until the defendant files his Rule 12.2(b)(2) notice to file a perfunctory motion achieves nothing.  Moreover, both parties agree that the defendant can object to the tests that the government experts intend to administer and no testing can occur until all disputes have been resolved by the Court.  *See* DE 584-1 at ¶ 3; DE 585-1 at ¶ 4.  Because the defendant can challenge the scope and nature of the government's proposed examination, he suffers no prejudice from entry of an order now that simply authorizes the government to have its experts examine the defendant should the defendant file a notice pursuant to Rule 12.2(b)(2).

3.    The videotaping of the government's experts' examinations

The defendant includes in his proposed scheduling procedures the requirement that, upon his request, the government experts video record any examination of the defendant.  DE 584-1 at ¶ 5.  The defendant also insists that a copy of the video recording be furnished to his counsel at the conclusion of the examination.  *Id*.

The government opposes entry of an order that requires its experts to videotape their examinations of the defendant.  The mental health professionals should establish the contours of the testing environment and be permitted to use their professional judgment as to whether recording the examination would adversely affect the integrity of the examination.  Many mental health professionals believe that videotaping the administration of tests interferes with the examination and, because it creates the potential for distraction and/or interruption of the examination, is inconsistent with the requirements for standardized test administration as set forth in the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct.  Moreover, courts have recognized that the presence of recording devices may have a detrimental effect on the testing process and thus impact the expert's findings.  *See, e.g.*, *United States v. Northington*, No. 07-550-05, 2012 WL 4024944, at *7–8 (E.D. Pa. Sept. 12, 2012) (denying request to videotape *Atkins* examination and finding expert is better equipped to determine the testing environment and effects on integrity of examination); *cf. Tomlin v. Holecek*, 150 F.R.D. 628, 631–34 (D. Minn. 1993) (finding recording of Fed. R. Civ. P. 35 mental examination would potentially invalidate evaluator's technique and impede examination).

The defendant offers no reason, let alone a compelling one, for requiring the government's experts to record their examinations.  Notably, the defendant does not propose that the defense experts also be required to record their examinations.  If the defendant's rationale for seeking a

recording of the government's examinations is rooted in his desire to ensure the integrity of those examination, then he should at a minimum propose that the Court require that all mental health examinations of the defendant—whether conducted by the defense or the government—be recorded.  But, as previously stated, the decision whether to record an examination should be left to the discretion of the mental health professional administering the tests.

4. The timing of disclosures of expert reports and the use of firewalled counsel

Under the defendant's proposed procedures, the defense will have its mental health evidence months before trial and will have the government's rebuttal evidence a full five days before the government even has access to one expert report.  DE 584-1 at ¶¶ 1, 10.  This proposal is not only at odds with the requirements of Rule 16, but it is also antithetical to the fair and efficient administration of justice.  By deliberately ignoring Rule 16, the defendant seeks an unfair and significant advantage during the penalty phase of the trial.  The Court should reject the defendant's naked attempt to diminish a jury's ability to make an informed sentencing determination.

As Judge Payne aptly noted in *Beckford*, "the Government's statutory right of rebuttal provides implicit authority to require notice, examination and discovery on mental health issues and conditions in order to make that rebuttal right a meaningful one."  962 F. Supp. at 760.  The defendant's proposed procedures render that right toothless; by urging the Court to withhold expert disclosures to the government for five days after the defendant has received the government's expert reports, the defendant seeks to hamstring the government's ability to adequately challenge the defendant's expert mental condition evidence and to prepare and present rebuttal expert evidence during the penalty phase.

The defendant's unjustified demands ignore his discovery obligations under Fed. R. Crim. P. 16(b)(1)(C).   That rule explicitly applies to expert mental condition evidence in the penalty phase of a capital trial.  *See id.* ("[T]he defendant must . . . give to the government a written summary of any [expert] testimony that the defendant intends to use . . . as evidence at trial if . . . (ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition."); *see also United States v. Wilson*, 493 F. Supp. 2d 348, 354–57 (E.D.N.Y. 2006); *United States v. Catalan Roman*, 376 F. Supp. 2d 108, 113–14 (D.P.R. 2005). Subsections (a)(1)(G) and (b)(1)(C) of Rule 16 require the parties to exchange written summaries of anticipated expert testimony, including the expert witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.  Rule 16 disclosures serve to facilitate the truth-seeking process in capital sentencing proceedings by eliminating unnecessary delay, avoiding surprise, and ensuring an informed sentencing determination.  *See Wilson*, 493 F. Supp. 2d at 355–56. The defendant has previously recognized the importance of exchanging Rule 16 expert disclosures far in advance of trial, as he agreed to the following procedures:  Rule 16 expert disclosures for non-mental health experts nearly four months before trial, DE 541-1 at 1; expert disclosures for mental health evidence bearing on the issue of guilt three months before trial, DE 541-1 at 3; and expert disclosures relating to the issue of mental retardation two months before trial, DE 541-1 at 2.

The defendant might contend that his proposed procedures are consistent with Rule 12.2(c)(2) and Rule 12.2(c)(3)'s prohibition against disclosing to any government attorney the results and reports of Rule 12.2 mental health examinations unless and until the defendant is found guilty of a capital crime and the defendant confirms his intent to offer expert mental condition

evidence on the issue of punishment.[1]  But the defendant is wrong, as Rule 12.2(c) does not relieve

the defendant of his obligations under Rule 16.  And, significantly, there is no conflict between

Rule 16's disclosure requirements and Rule 12.2(c)'s disclosure prohibitions if, as many courts

have done, the reference to "any attorney for the government" in Rule 12.2(c)(3) is construed to

encompass only the prosecution team.  *See, e.g.*, *United States v. Sampson*, 335 F. Supp. 2d 166,

245 (D. Mass. 2004) (finding it is "reasonable and consistent with the goals of the new Rule 12.2

to interpret 'any attorney for the government' to mean any attorney for the government in a

particular prosecution except those attorneys representing the government's interests solely in

connection with its experts' testing"); *see also United States v. Watts*, No. 14-cr-40063–JPG, Doc.

468 (S.D. Ill. Dec. 19, 2016); *United States v. Millner*, No. 7:13-cr-00015–ART–REW, Doc. 48

(E.D. Ky. May 19, 2014); *United States v. Montgomery*, No. 2:11-cr-20044–JPM, Doc. 369 (W.D.

Tenn. Mar. 27 2014); *United States v. Williams*, 731 F. Supp. 2d 1012, 1026 (D. Haw. 2010);

*United States v. Umana*, No. 3:08CR134-RJC, 2009 WL 2489309, at *4 (W.D.N.C. Aug. 12,

2009); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1240 (D.N.M. 2008); *Wilson*, 493 F. Supp.

2d at 353–57; *United States v. Johnson*, 362 F. Supp. 2d 1043, 1077–81 (N.D. Iowa 2005).

In order to allow for the reciprocal exchange of expert mental condition evidence required

by Rule 16 while simultaneously avoiding the intolerable risk of violating the defendant's Fifth

---

[1]  The defendant cannot, however, credibly claim that the federal rules support his request to have five days with the government's expert reports before either confirming or disavowing his intent to introduce expert mental condition evidence at the penalty evidence.  No federal rule gives the defendant such an unfair advantage and he does not even attempt to identify any authority that would support it.  The defendant has similarly failed to articulate a reasonable need to be in possession of all the expert reports for nearly a week—during the penalty phase—before the government is afforded the opportunity to review those same reports.  The reason for the defendant's failure to justify his request is plain:  he does not *need* five days to make his decision.  Rather, he *wants* the expert reports five days before they are produced to the government so that he can gain a significant tactical advantage during the penalty phase.  This Court should not countenance the defendant's naked attempt to undermine the truth-seeking process.

and Sixth Amendment rights, the Court should authorize the appointment of a firewalled counsel. Firewalled counsel would receive the defendant's Rule 16 disclosures and would provide the government's Rule 16 disclosures to the defense.  Firewalled counsel would also represent the government on issues that may arise in the course of the examination process, including communicating with defense counsel or the Court, if necessary.  Under the government's proposed procedures, firewalled counsel would be completely insulated from the prosecution team from the time that the defendant discloses his experts' results and reports until such time as the defendant is found guilty and confirms that he will offer expert mental condition evidence at the penalty phase.  DE 585-1 at ¶ 6.  The government's proposed procedures thus fully comply with Rule 12.2, as the prosecution team would not be privy to any of the opinions, bases, or raw data of the government's or the defense's mental condition experts unless and until the defendant is convicted of a capital crime and reaffirms his intent to introduce mental health evidence bearing on the issue of punishment.

Numerous courts have recognized the benefits of using firewalled counsel in this manner. *See, e.g.*, *Watts*, No. 14-cr-40063–JPG, Doc. 468 at 8; *Millner*, No. 7:13-cr-00015–ART–REW, Doc. 48 at 4–5; *Montgomery*, No. 2:11-cr-20044–JPM, Doc. 369 at 21; *Sampson*, 335 F. Supp. 2d at 243; *Williams*, 731 F. Supp. 2d at 1026; *Umana*, No. 3:08CR134-RJC, 2009 WL 2489309, at *4; *Lujan*, 530 F. Supp. 2d at 1240; *Wilson*, 493 F. Supp. 2d at 353–57; *Johnson*, 362 F. Supp. 2d at 1077–81.

The appointment of firewalled counsel does not just promote fairness; it also reduces the risk of delay in capital sentencing proceedings.  This significant benefit was recognized by the court in *Sampson*:

> Rule 12.2's goal of avoiding delays in capital sentencing proceedings would not be
> served if any problems with the government testing were not revealed until after

the guilt phase. The defendant could suffer no prejudice from the fire-wall
procedure. Indeed, the procedure might provide the defendant with an even greater
sense of security that his defense strategy . . . would remain hidden from the
prosecution team.

335 F. Supp. 2d at 245. That issues might arise before and/or during the government's examination

is not merely speculative. On the contrary, it is reasonably foreseeable that during an examination

of the defendant, the government's experts may realize that additional testing is necessary or that

a different type of expert needs to evaluate the defendant to either rule out a diagnosis or confirm

findings made during a prior evaluation. Absent the appointment of a firewalled attorney, these

issues would go unresolved until the penalty phase because the government's expert is properly

precluded from communicating with the prosecution team about the issues before the defendant

confirms—at the penalty phase—his intent to present mental health evidence in mitigation at

sentencing. Not only will this hamper the government's ability to develop appropriate rebuttal

testimony, but it could also be detrimental to the defendant if additional testing could yield

favorable evidence for him. If issues regarding testing, including the need for additional testing

or retention of other experts, are not resolved before trial, the government will be compelled to

seek a delay in the sentencing proceeding to address these evidentiary issues. Such delays are

completely avoidable if firewalled counsel is appointed.[2]

The utilization of firewalled counsel permits reciprocal expert disclosures that allow each

party to fairly and timely address the other's expert evidence. This procedure also fully protects

---

[2]   Indeed, the defendant's proposed procedures illustrate the necessity of having a firewalled
attorney appointed in this case. For example, the defendant proposes that the government's experts
not have any discussions with the prosecution team after the rebuttal examination has begun. DE
584-1 at ¶s 8 and 9. But the defendant also proposes that the government file its expert's results
and any video recording with the court, under seal, within 15 days after completion of the rebuttal
examination. *Id.* at ¶ 7. While the defendant includes language in his proposed order that would
prohibit the government attorneys from viewing the contents of the report or the video recording
prior to filing it with the Court, he does not address how logistically the government attorneys will
be able to receive and file these materials without communicating with the government's experts.

the defendant's constitutional rights.  Thus, the procedures proposed by the government satisfy the requirements of both Rule 16 and Rule 12.2 and should be adopted by the Court.

      5.    <u>Requiring written confirmation from the government's expert</u>

      The defendant also asks that the Court's order include a provision requiring the government's expert to sign a written confirmation acknowledging that he is not to discuss his examination, his conclusions, or any other information derived from the examination with anyone unless and until the results of his examination and report are unsealed and released to the government.   DE 584 at ¶ 9; DE 584-1 at ¶ 9.  For several reasons, the government objects to any such provision being included in the Court's order governing the Rule 12.2(b)(2) procedures.  First, the government's expert should be permitted to discuss his examination with his medical staff and any other medical professional consistent with his professional obligations to keep such information confidential.  Second, the government's expert should also be permitted to discuss his findings and any issues arising from his examination with firewalled counsel.  Third, to the extent that the defendant requests the inclusion of this language to guard against intentional or inadvertent disclosures to the prosecution team, the provision is completely unnecessary.  The Court's order should be sent to all mental health experts so that each expert is aware of the applicable restrictions.  The prosecution team will also ensure that it has no contact with the government's experts at any time after the defendant's Rule 16 disclosures are provided to firewalled counsel or commencement of the rebuttal examinations, whichever occurs first.  Of course, those limitations on contacts between the prosecution team and the government's experts will be lifted if, in the penalty phase, the defendant confirms his intent to introduce mental condition evidence in mitigation.

## **CONCLUSION**

The Rule 12.2(b) procedures proposed by the government, including the appointment of firewalled counsel, afford the government with the necessary notice to investigate appropriate rebuttal evidence while protecting the defendant's Fifth and Sixth Amendment rights.   The government's proposed procedures seek nothing more than a fair and level playing field regarding expert evidence bearing on the issue of punishment.   Accordingly, the government respectfully requests that the Court enter the government's proposed order, namely, Docket Entry 585-1.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:  _____/s/_____
Rebeca H. Bellows
Alexander E. Blanchard
Cristina C. Stam
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
Fax: (703) 299-3982
becky.bellows@usdoj.gov
alexander.blanchard@usdoj.gov
cristina.stam@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.


                /s/
                Rebeca H. Bellows
                Assistant United States Attorney