IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:18-cr-123-2 (RDA) |
| | ) | |
| ELMER ZELAYA MARTINEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on certain pretrial motions brought by Defendant Elmer Zelaya Martinez's ("Defendant"): Motion to Strike the Death Penalty (Dkt. 724); Challenge and Additional Challenges to Notice of Intent to Seek the Death Penalty (Dkt. Nos. 726; 758); Motion to Strike the Death Penalty as a Sentence Option (Dkt. 727); Motion for Informative Outline of Aggravating Factors (Dkt. 728); Motion for Rule 5(f) Order (Dkt. 759); and Motion to Compel Production of Discovery Under Federal Rule of Criminal Procedure 16 and *Brady* Line of Cases (Dkt. 760). Having considered the parties' briefs and oral argument, these matters are now ripe for resolution.

## I. BACKGROUND

On February 21, 2019, a federal grand jury returned a Second Superseding Indictment ("Indictment"), charging Defendant and his co-defendants with various crimes, including racketeering activity that allegedly involved extortion and murder. *See* Dkt. 162. That Indictment sets forth that Defendant belonged to a criminal racketeering enterprise—La Mara Salvatrucha, or MS-13—one of whose purposes was "preserving, expanding, and protecting the power, territory, and reputation of MS-13 through the use of violence, threats of violence, and intimidation." *Id.* ¶¶

1, 12(a).  According to the Indictment, the MS-13 "clique" to which Defendant belonged, Park View Locos Salvatrucha, operated in Fairfax County, Virginia, among other places.  *Id.* ¶ 8.

The Indictment further alleges that the "purpose of the conspiracy was to adhere to MS-13's rule of attacking and killing individuals who are identified as being rival gang members." *Id.* at 10, 15.  Relevant here, Defendant Elmer Zelaya Martinez has been charged with murdering two victims he and his co-defendants believed to be members of rival gangs: S.A.A.T. and E.E.E.M. *See id.* at 20-21 (Counts Five and Six charging Defendant with murder in aid of racketeering activity in violation of 18 U.S.C. §§ 1959(a)(1) and (2)).  The eight-count Indictment includes several intent factors drawn from 18 U.S.C. § 3591 and sets forth several statutory aggravating factors outlined in 18 U.S.C. § 3592(c).

On January 6, 2020, the Government filed its Notice of Intent to Seek a Sentence of Death ("Notice of Intent" or "NOI") as to Defendant Elmer Zelaya Martinez alone.  Dkt. 425.  This notice closely resembles the Indictment's special findings and adds other non-statutory aggravating from 18 U.S.C. § 3593(a) and (c).  Following that Notice of Intent authorized by then-Attorney General William Barr, the Court—citing the risk of prejudice—severed the trial of Defendant from the trial of his co-defendants, none of whom face a potential death sentence.  Dkt. 447.  Defendant's separate capital trial is set to begin on April 4, 2022.  Dkt. 832.

Defendant brought a number of motions related to the Government's decision to seek the death penalty in his case.  The Court held a hearing on these motions on March 10, 2021.  Dkt. 830.  At that hearing, the Court indicated that it would grant Defendant's Motion for Continuance of the Trial Date (Dkt. 717) and the Government's Unopposed Motion for Entry of An Amended Order Pertaining to Rule 12.2(b)(2) Procedures (Dkt. 825).  Orders granting these motions issued the following day.  Dkt. Nos. 832; 834.  At the motions hearing, Defendant withdrew without

prejudice his Motion for Disclosure of Jury Records (Dkt. 729).  The Court took the remaining motions submitted by Defendant under advisement.  On April 15, 2021, the Court granted Defendant's Motion for Rule 5(f) Order.  *See* Dkt. 853.

## II. STANDARD OF REVIEW

The Court is guided by several legal standards as it evaluates the merits of Defendant's motions.  First, the Court presumes—as it must—that the Federal Death Penalty Act ("FDPA") is constitutional on its face.  *See Glossip v. Gross*, 576 U.S. 863, 869 (2015); *Gregg v. Georgia*, 428 U.S. 153, 175 (1976) (plurality opinion) ("[I]n assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity.").  A defendant challenging the FDPA, then, bears the burden of proving that the law is unconstitutional.  *See Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 198 (2001) ("As the party challenging the statutory [] scheme, respondent bears the burden of demonstrating its unconstitutionality."); *see also INS v. Chadha*, 462 U.S. 919, 944 (1983) ("We begin, of course, with the presumption that the challenged statute is valid.").

For a capital defendant to prevail on his facial challenge to the death penalty, he must show that "no set of circumstances exists under which the [FDPA] would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully.").  Accordingly, when a court reviews an "as-applied" challenge, it must examine only the application of the law to the particular parties and the facts of the case before it, without considering whether the FDPA could be construed as unconstitutional in another hypothetical case.  *See United States v. Le*, 327 F. Supp. 2d 601, 610 (E.D. Va. 2004); *accord United States v. Stevens*, 559 U.S. 460, 473 n.3 (2010) (observing that case-specific "factual assumptions . . . can be evaluated only in the context of an as-applied challenge.").  And

finally, when the Supreme Court has spoken on an issue with "direct application in a case," this Court must "follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989).

## III. ANALYSIS

### A. Motion to Strike the Death Penalty

Defendant moves to strike the Government's notice of intent to seek the death penalty, advancing three main arguments for why the Court should find the FDPA unconstitutional. Dkt. 724. First, he contends that the law is facially unconstitutional, arguing that it must fall under *Ring v. Arizona*, 536 U.S. 584 (2002), and the Fifth, Sixth, and Eighth Amendments because the law does not specifically require the prosecutor to present statutory aggravating factors to the grand jury and charge them in the indictment. Second, Defendant claims the Special Findings in the Indictment run afoul of the Fifth Amendment's Indictment Clause. Third, he argues that the non-statutory aggravating factors alleged in the death notice are not supported by the Indictment and must be dismissed. The Court addresses each argument in turn.

### 1. Constitutionality under *Ring v. Arizona*

At the outset, the Court does not agree that *Ring* decrees the FDPA facially unconstitutional. In that opinion, the Supreme Court overruled its prior precedent in *Walton v. Arizona* "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." *Ring*, 536 U.S. at 609. Reasoning that the "enumerated aggravating factors" in Arizona's capital sentencing scheme operated as "'the functional equivalent of an element of a greater offense'" as defined by the Court's subsequent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19 (2000), *Ring*

4

reconciled the Court's conflicting precedents by deciding that the Sixth Amendment guarantee means these aggravating factors must be found by a jury—not a judge.  536 U.S. at 609.

Defendant argues that this core holding from *Ring* applies with equal force to the FDPA because the statute does not expressly require statutory aggravating factors to be alleged in an indictment.  Dkt. 724, 8-10.  Yet his argument overreads *Ring* and discounts Fourth Circuit authority approving of the capital charging procedure the Government followed in this case.  The Supreme Court in *Ring* held that aggravating factors must be found by a jury at the penalty phase, but it never held an aggravating factor must be presented to and charged by a grand jury at the indictment stage.  *See* 536 U.S. at 609.

The fact that the text of the FDPA does not expressly require a grand jury to charge an aggravating factor does not necessarily mean that a prosecutor is barred from presenting an aggravating factor to the grand jury when she seeks an indictment.  *See United States v. Barnette*, 390 F.3d 775, 789 (4th Cir. 2004) ("A review of the statute itself reveals no language that restricts the government from submitting aggravating factors to the grand jury . . . the fact that the government is not so restricted is no indication that such is required"), *judgment vacated on other grounds*, 546 U.S. 803 (2005).  Under the FDPA, the government may include an aggravating factor in a death notice notwithstanding the fact that the aggravator did not appear on the face of the indictment.  That is the law of this circuit, and the Court is duty-bound to follow it unless and until the appellate court follows a new course.

Defendants' non-delegation and separation of powers arguments are also unsuccessful. Contrary to Defendant's suggestion, the Court need not engage in "judicial amendment" to uphold the statute as constitutional.  Dkt. 724, 5 (citing *United States v. Jackson*, 390 U.S. 570 (1968)). Moreover, *Jackson* does not control the outcome of this case.  The Supreme Court in *Jackson*

declared the Federal Kidnapping Act's death-penalty provision unconstitutional, turning back a rather bold argument to formulate a saving construction of the law.  *See* 390 U.S. at 585.  The government argued that the statute at issue in *Jackson*, which penalized defendants who exercised their jury trial rights by subjecting them to the death penalty—while at the same time exempting from capital punishment any defendant who entered a guilty plea or waived his jury trial right— could be cured if the Supreme Court simply read into the statute a provision allowing a trial court to convene a special jury that might recommend the death penalty.  *Id.* at 570-72.  The Supreme Court rejected that interpretation.  *Id.* at 585 ("The capital punishment provision of the Federal Kidnaping Act cannot be saved by judicial reconstruction.").  But unlike the Federal Kidnapping Act's capital scheme the Court struck down in 1968, the FDPA does not require a trial court "to create from whole cloth a complex and completely novel procedure and to thrust it upon unwilling defendants."  *Id.* at 580.  This Court, then, does not violate the separation of powers by simply requiring the Government to act within the permissible bounds of the FDPA, just as scores of other federal courts have done since its enactment.

Neither is there a *Ring* problem lurking in the FDPA under the logic of *Hurst v. Florida*. The statute does not permit the sort of judicial override sanctioned by the Florida law the Supreme invalidated in *Hurst*, which permitted a judge to impose a death sentence even if the jury recommended a life sentence.  *See* 577 U.S. 92, 99 (2016) (holding "that Hurst's sentence violates the Sixth Amendment" because, "[a]s with *Ring*, a judge increased Hurst's authorized punishment based on her own factfinding.").  The FDPA does not afford a trial judge a *Hurst*-like font of unbridled discretion, and, accordingly, Defendant's argument that the FDPA must fall under *Hurst* is unpersuasive.  *See* Dkt. 724, 8.  Thus, "there is no new 'procedure' that the Court must graft

onto the FDPA" to find the law constitutional under *Ring*. *See United States v. Mills*, 393 F. Supp. 3d 650, 662 (E.D. Mich. 2019).

Defendant next claims the FDPA violates the non-delegation doctrine because the statute permits the executive branch to substitute its judgment for that of Congress with respect "to prescribing the elements and the procedures for application of the federal death penalty." Dkt. 724, 18.[1] The Fourth Circuit's opinion in *Higgs v. United States* forecloses this line of argument because it observed that the FDPA "does not delegate a legislative function to the prosecutor." 353 F.3d 281, 321 (4th Cir. 2003). What is more, Defendant's invocations of dissenting opinions filed in *Mistretta v. United States*, 488 U.S. 361, 415 (1989) (Scalia, J., dissenting) and *Blakely v. Washington*, 542 U.S. 296, 334-35 (2004) (Breyer, J., dissenting), even if fairly read to support his position, *see* Dkt. 724, 18-19, do not persuade the Court that the FDPA violates the non-delegation doctrine because "it is axiomatic that Supreme Court dissents do not state controlling law." *Harrington v. United States*, 689 F.3d 124, 136 n.7 (2d Cir. 2012). Congress did not violate the non-delegation doctrine when it enacted the FDPA, and Defendant's arguments to the contrary must be rejected.

In sum, the FDPA survived *Ring*. The Court does not conclude the law is unconstitutional on its face as a separation-of-powers matter or under the non-delegation doctrine. And because the Court upholds the constitutionality of the FDPA on this basis, it need not engage Defendant's severability arguments related to the law's purported unconstitutionality.

---

[1] This non-delegation challenge is separate from the non-delegation argument Defendant makes as part of his challenge to the non-statutory aggravating factors set forth in the NOI, which the Court addresses in Part III(B)(2)(b)(iii) of the Opinion.

2. Special Findings

The Indictment contains a "Notice of Special Findings" by the grand jury.  Dkt. 162, 24-29.  Defendant argues these special findings should be stricken and the death notice should be dismissed because the Indictment fails to comport with the Fifth Amendment.  Dkt. 724, 24-25.

First, Defendant asserts that the grand jury lacked authority to issue special findings, but "[t]here is nothing in the Federal Rules of Criminal Procedure that prohibits the grand jury from alleging all the elements of an offense that it proposes to charge."  *United States v. Sampson*, 486 F.3d 13, 23 (1st Cir. 2007) (describing this argument as "without merit").  The procedure the Government used to obtain a grand jury indictment with the special findings it articulated complied with the Fifth Amendment.  *See United States v. Regan*, 221 F. Supp. 2d 672, 680 (E.D. Va. 2002) ("[T]he form chosen by the Government in presenting these facts in the superseding indictment— the 'Notice of Special Findings'—is permissible.  Neither the Fifth Amendment nor Fed. R. Crim. P. 7 prohibits the presentation of such information in this manner.").

Defendant also raises another series of arguments.  He claims that: (1) the Indictment violates the Fifth Amendment because it does not directly state that the Grand Jury's special findings subject Defendant to the death penalty or reveal that the Grand Jury intended to return an indictment charging a capital offense; and (2) the Grand Jury's failure to indict all elements of a capital offense and weigh aggravating and mitigating factors mean the NOI must be dismissed. Dkt. 724, 28-35.  Yet Defendant's theory runs up against prior decisions of this Court and pushes the Indictment Clause beyond its traditional scope.

Defendant suggests this Indictment cannot stand under the Fifth Amendment because grand jurors might not have been aware that the Indictment's special findings would aid the Government in seeking a death sentence in this case.  *Id.* at 29-34.  Even if the Court assumes that the laypersons

of the Grand Jury remained unaware that the capital crimes charged could result in the imposition

of the death penalty in this case—a contestable assumption, at best—Defendant's argument would

still fail.  Neither the Indictment Clause nor the Federal Rules of Criminal Procedure demand full

omniscience from a grand jury.  *See United States v. Smith*, No. 3:07-cr-433, 2008 WL 3285911,

at *3 (E.D. Va. Aug. 8, 2008) ("Determinations as to sentencing and punishment have never been

within the province of a grand jury."); *United States v. Lecco*, Nos. 2:05-107-01, 2:05-107-02,

2007 WL 1074775, at *3 (S.D. W. Va. Apr. 5, 2007) ("[T]he Indictment Clause of the Fifth

Amendment does not require the government to inform the grand jury of the potential penalties

that might attach as a result of any special findings.").  Because the Government was not required

to inform the Grand Jury that Defendant could face capital punishment upon conviction of crimes

charged in the Indictment, the Court finds no Fifth Amendment violation.

Although Defendant also seeks to invalidate the NOI based on the Grand Jury's failure to

allege all elements of a capital offense, that fact does not empower a court to strike a death notice.

To comply with the Fifth Amendment, an indictment must "contain[] the elements of the offense[s]

charged and fairly inform[] a defendant" of the charges against him, and it must also permit him

to plead double jeopardy as a defense to future prosecutions for the same offenses.  *See United

States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S.

87, 117 (1974)).  This Court has declined to stack additional requirements atop this constitutional

minimum because doing so "would convert the grand jury review process into an adversarial

setting, contrary to precedent and its constitutional underpinnings."  *Smith*, 2008 WL 3285911, at

*3.  The Indictment meets that standard and therefore does not run afoul of the Fifth Amendment.

*See* Dkt. 162.  And although Defendant is quite right that a conscientious juror may find the degree

to which aggravating factors tip the balance in favor of death fails to justify imposing a death

sentence, that sort of weighing is a task reserved to the sentencing jury under the FDPA. *See Smith*, 2008 WL 3285911, at *2 (citing *United States v. Purkey*, 428 F.3d 738, 750 (8th Cir. 2005) and observing that "the weighing process mandated by 18 U.S.C. § 3593(e) is not the equivalent of 'elemental fact' finding"). The failure of the Grand Jury to weigh aggravating against mitigating factors in this case presents no constitutional problem.

For these reasons, the Court does not strike the Special Findings of the Indictment or the NOI on Fifth Amendment grounds.

### 3. Non-Statutory Aggravating Factors in the Death Notice

Additionally, Defendant argues that certain non-statutory aggravating factors that appeared in the NOI, but not the Indictment, must be stricken. Dkt. 724, 35-40. The Fourth Circuit, however, has held that "[b]ecause nonstatutory aggravating factors do not increase the available punishment to which a defendant might be subjected, they are not required to be alleged in the indictment." *Higgs*, 353 F.3d at 299. The Fourth Circuit reaffirmed this holding seven years later to reiterate that the opinion of the Supreme Court in *Blakely*, 542 U.S. at 313, did not require the court to reevaluate its rule. *See United States v. Lighty*, 616 F.3d 321, 368 (4th Cir. 2010) (holding that post-*Blakely*, "a non-statutory aggravating factor is not one of those 'facts legally essential to the punishment' that must be included within the indictment"). Accordingly, binding precedent forecloses Defendant's argument that the Government was required to include the non-statutory aggravating factors under 18 U.S.C. § 3593(a) and (c) in the Indictment as it did in the NOI. Therefore, the non-statutory aggravators will not be stricken on this basis.

### B. Motions Challenging the Notice of Intent to Seek the Death Penalty

Defendant has submitted a Challenge to the Notice of Intent to Seek the Death Penalty through an initial motion (Dkt. 726) and a supplemental filing (Dkt. 758), which Defendant was

permitted to submit after the Court granted leave to file additional challenges.  Through these challenges, Defendant seeks to strike three of the four "statutory threshold factors" or mental state eligibility factors.  Dkt Nos. 726; 758.  He also challenges aggravating factors, including (1) four aggravating factors articulated by the FDPA at 18 U.S.C. § 3592(c), and (2) seven non-statutory aggravating factors.  *Id.*  The Court evaluates each challenge successively.

### 1. Mental State Eligibility Factors

At the first stage of a capital trial, the government must establish that a defendant had the requisite mental state to commit an offense punishable by death.  Under the FDPA, a jury must find beyond a reasonable doubt that the defendant committed the crime with one of four mental states: (1) intentionally killing the victim; (2) intentionally inflicting serious bodily injury that resulted in the victim's death; (3) intentionally participating in an act while contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, which directly resulted in the victim's death; or (4) intentionally and specifically engaging in an act of violence, knowing that the act created a grave risk of death to a person and constituted a reckless disregard for human life, which directly resulted in the victim's death.  *See* 18 U.S.C. § 3591.  In the NOI, the Government sets forth each of these four mental states, stating that the Government will ask the jury to find Defendant eligible for the death penalty based on any one of these gateway factors.  Dkt. 425.

Defendant argues that only the first mental state eligibility factor—the "intentionally killed the victim" state, 18 U.S.C. § 3591(a)(2)(A)—should remain.  Dkt. 726, 2.  Relying on the Fourth Circuit's opinion in *Tipton v. United States*, 90 F.3d 861, 898 (4th Cir. 1996), Defendant argues these four mental states "reflect four distinctly different levels of moral culpability" and the latter three should be stricken from the NOI as duplicative or unfairly prejudicial, confusing, or

misleading.  *Id.* at 2.  *Tipton* interpreted a similar federal law, although Congress later repealed the capital provisions of the statute it interpreted.  *See United States v. Barrett*, 496 F.3d 1079, 1106 (10th Cir. 2007).  More importantly, *Tipton* was not the Fourth Circuit's final word on the issue. When a Fourth Circuit panel decided *United States v. Jackson*, it held that submitting all four section 3591 intent factors to the jury was not improper.  327 F.3d 273 (4th Cir. 2003) ("[T]he district court did not err in submitting all four types of intent for the jury's consideration.  Whether the jury found one type of intent or all four would not, under the instructions given, skew the weighing process.").  The other cases Defendant cites in support of his argument about impermissible duplication of mental state factors—*United States v. Beckford*, 968 F. Supp. 1080, 1089 (E.D. Va. 1997), and *United States v. McCullah*, 76 F.3d 1087, 1111 (10th Cir. 1996)— would be more persuasive on this point but for a critical difference: both cases involved the weighing of mental state factors as aggravating factors, not as gateway intent factors.

In light of *Jackson*, the Court finds that the four section 3591 mental state factors set forth in the NOI are not duplicative.  Neither will allowing the jury to consider all four mental state factors result in an unavoidable violation of the Fifth, Sixth, or Eighth Amendments.  To be sure, any risk of prejudice may be addressed through a proper limiting instruction.  Submitting multiple intent factors to the jury at the gateway eligibility phase does not amount to a *per se* constitutional violation.

## 2. Aggravating Factors

Defendant challenges both statutory and non-statutory aggravating factors alleged in the NOI.  *See* Dkt Nos. 726; 758.  The Court's analysis of aggravating factors is based on the principle first articulated in *Godfrey v. Georgia*, where the Supreme Court's plurality Opinion invalidated an aggravating factor because the Georgia courts had failed to give an otherwise-vague aggravating

circumstance a narrowing construction that would make it constitutionally permissible. 446 U.S. 420, 433 (1980) ("There is no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not."). Applying this principle, an aggravating factor is impermissible if it is "unconstitutionally vague, overbroad, duplicative or irrelevant." *United States v. Grande*, 353 F. Supp. 2d 623, 630 (E.D. Va. 2005). The FDPA imposes an additional standard, requiring that where the probative value of information relevant to an aggravating factor is "outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury," it may be excluded. 18 U.S.C. § 3593(c).

### a. Statutory Aggravating Factors

Defendant challenges the substantial planning and premeditation and the vulnerable victim aggravating factors, claiming both should be stricken from the NOI. *See* Dkt. 726 (citing 18 U.S.C. § 3592(c)(9), (11)). The Government seeks to apply the substantial planning and premeditation aggravating factor to Defendant's alleged murder of both victims and the vulnerable victim aggravating factor to Defendant's alleged murder of S.A.A.T. *See* Dkt. 425 at V(D).

### i. Substantial Planning and Premeditation Factor

In his challenge to the substantial planning and premeditation factor, Defendant asserts that evidence of "planning and premeditation" standing alone is unconstitutionally vague and overbroad because it does not adequately narrow the class of persons eligible for the death penalty, that the modifier "substantial" does not improve the aggravator because it does not adequately inform juries what they must find to impose the death penalty, that no construction of "substantial" is both narrowing and specific, and that it is duplicative. *See* Dkt. 726, 23-31. None of Defendant's challenges succeed.

First, even assuming that every homicide entails some degree of planning and premeditation, "homicides involve a broad spectrum of planning and premeditation. Some involve elaborate schemes, others a momentary flash of passion." *Smith*, 2008 WL 3285911, at *8. The key point, though, is that some homicides carry "a higher grade of culpability than others" due to the extent to which they were planned and premeditated. *Id.* As this Court has observed before, this factor narrows the class of persons eligible for the death penalty.

Second, the Court adheres to the Fourth Circuit's construction of "substantial" "to mean a higher degree of planning than would have the words 'planning and premeditation' alone—i.e., more than the minimum amount sufficient to commit the offense." *Jackson*, 327 F.3d at 301 (quoting *Tipton*, 90 F.3d at 896). The aggravating factor is therefore not invalid due to unconstitutional vagueness.

Third, "substantial" is both narrowing and specific enough under controlling Fourth Circuit case law upholding jury instructions that have defined the term. *See id.*

Lastly, without more supporting detail, Defendant's argument that the substantial planning and premeditation factor duplicates the crimes charged in the Indictment and the threshold intent factors cannot be sustained. *See* Dkt. 726, 31. The factor is not unconstitutionally vague or overbroad and therefore stands as set forth in the NOI.

### ii. Vulnerable Victim Factor

Defendant also contends that the vulnerable victim statutory aggravating factor in 18 U.S.C. § 3592(c)(11), which the NOI sets forth as to Counts Six and Eight with respect to the alleged murder of S.A.A.T., is arbitrary and unsupported by the evidence. *See* Dkt. 726, 31-32 (citing Dkt. 425). But the transient objection to this factor Defendant provides in his challenge highlights what little basis there is to declare this factor unconstitutionally vague at this stage of

litigation.  Instead, Defendant's vagueness challenge is properly understood as a sufficiency-of-the-evidence challenge rather than a challenge to the NOI.  This sufficiently addresses the inquiry at this phase of the case because "[t]o rule out this aggravator for vagueness at this time would be a premature determination of its validity."  *United States v. McVeigh*, 944 F. Supp. 1478, 1490 (D. Colo. 1996).  The Court will deny Defendant's challenge to the vulnerable victim factor without prejudice, recognizing that this Court "must await the evidence, at least at the trial of the counts of the indictment, before determining whether and to what extent a penalty phase jury will be allowed to consider this factor."  *Id.*; *see also United States v. Bowers*, No. CR 18-292, 2020 WL 6334785, at *8 (W.D. Pa. Oct. 29, 2020) ("Such challenges are more properly addressed at or closer to trial.").

### b. Non-statutory Aggravating Factors

Defendant challenges the non-statutory aggravating factors in the NOI both on generalized and individual grounds.  *See* Dkt. Nos. 726; 758.  In addition to his global challenges to the non-statutory aggravating factors under the Eighth Amendment, the *Ex Post Facto* Clause, and the non-delegation doctrine, Defendant objects to the following individual non-statutory aggravating factors in the Notice of Intent: (1) victim impact; (2) lack of remorse; (3) pattern of criminal activity; (4) commission of crimes to increase or maintain his position in MS-13; and (5) future dangerousness.  *Id.*  The Court takes each challenge in succession.

### i. Eighth Amendment Challenge

Defendant brings an Eighth Amendment challenge to the non-statutory aggravating factors, positing that the FDPA violates the Eighth Amendment because that act fails to channel the discretion of prosecutors in defining and choosing non-statutory aggravating factors in a capital case.  This unguided discretion, in Defendant's telling, tips the scales in favor of death and creates

a risk that the death penalty will be imposed arbitrarily.  Dkt. 726.  Controlling Fourth Circuit precedent in *Higgs*, 353 F.3d at 281, forecloses Defendant's objection.  From *Higgs*, this Court extracts the statement of black-latter law that "[o]nce a defendant has been rendered eligible for the death penalty by the jury's finding of a statutory aggravating factor," "the use of nonstatutory aggravating factors serves only to individualize the sentencing determination."  *Id.* at 320 (citing *Zant v. Stephens*, 462 U.S. 878-79 (1983)).  Consequently, the non-statutory aggravating factors in the NOI do not violate the Eighth Amendment.

## ii. *Ex Post Facto* Clause Challenge

Defendant's universal objections to the NOI's non-statutory aggravating factors also include a challenge under the Constitution's *Ex Post Facto* Clause.  The clause provides that "[n]o . . . ex post facto law shall be passed."  U.S. Const. art. I, § 9, cl. 3.  Drawing from historically rooted notions of fair notice, the *Ex Post Facto* Clause bars laws that retroactively increase a defendant's punishment after commission of the crime, *see Johnson v. United States*, 529 U.S. 694, 699 (2000), and laws that change the substantive definition of the crime after the fact, *see Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504-05 (1995).  The non-statutory aggravating factors alleged in the NOI commit neither transgression.  *Higgs* instructs that because a jury weighs non-statutory aggravating factors as it makes an "individualized determination" of whether to impose a death sentence on a defendant who has already been found death-eligible, these factors "do not increase the possible punishment or alter the elements of the offense."  353 F.3d at 322. As a result, Defendant's *Ex Post Facto* Clause objection is unavailing.

16

### iii. Non-delegation Doctrine Challenge

Defendant invokes the non-delegation doctrine to challenge the non-statutory aggravating factors in the NOI.  This doctrine of constitutional law flows from the separation of powers and holds that Congress may not unreservedly delegate "strictly and exclusively" legislative functions to another branch of government.  *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825)).  The longstanding test for determining whether a delegation of power complies with the doctrine states that "[i]f Congress shall lay down by legislative act an intelligible principle . . . such legislative action is not a forbidden delegation of legislative power."  *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928).  Relying primarily on dissenting opinions, Defendant attacks the intelligible principle test and urges the Court to find that the FDPA violates the non-delegation doctrine because it unconstitutionally delegates legislative power to the executive to establish additional elements of an offense in the form of non-statutory aggravating factors.  Dkt. 726, 13-15.

Again, controlling precedent bars the relief Defendant seeks.  The Fourth Circuit has held that under the FDPA, prosecutorial discretion is "wholly circumscribed" because the law requires "that the jury unanimously find at least one intent factor and one statutory aggravating factor" at the death-eligibility phase before any non-statutory aggravating factor the prosecutor chooses to introduce may be weighed with mitigating factors.  *Higgs*, 353 F.3d at 321.  Whatever fault Defendant may find with the FDPA's design, the law "does not delegate a legislative function to the prosecutor."  *Id.*  Defendant's non-delegation challenge fails.

### iv. Victim Impact

The Government's Notice of Intent includes victim-impact non-statutory aggravating factors alleging Defendant caused injury, harm, and loss to E.E.E.M.'s and S.A.A.T.'s family and

friends.  *See* Dkt. 425.  Defendant presses a constitutional and statutory argument, opposing the victim-impact aggravator on Eighth Amendment and FDPA grounds.

According to Defendant, *Payne v. Tennessee* cabins victim-impact evidence at the penalty phase of a capital trial to evidence that shows the aftereffects of the crime on a victim's family. Dkt. 726, 33-35.  *Payne* determined that permissible victim-impact testimony embraced "evidence about the victim and about the impact of the murder on the victim's family[.]"  501 U.S. 808, 827. Defendant reads *Payne*'s silence to mean all other forms of victim-impact evidence are *per se* improper at capital sentencing.  The Fourth Circuit, however, "see[s] no reason to think that the *Payne* Court intended to forbid the introduction of evidence regarding the impact of the victim's death on his friends and colleagues as well as his family."  *United States v. Runyon*, 707 F.3d 475, 500 (4th Cir. 2013).  With *Runyon* having filled the gap, this Court is bound to apply the appellate court's reading of *Payne* and must conclude that victim-impact evidence from persons other than victims' family members cannot be categorically barred during the penalty phase of a capital trial.

As for his statutory argument, Defendant similarly construes statutory silence to mean that the FPDA implicitly forbids victim-impact testimony from any non-family member.  Dkt. 726, 34-35.  To be certain, in 18 U.S.C. § 3593(a), Congress spoke specifically to evidence about "the victim and the victim's family."  *Id.*  But in the same breath, the statute provides that a victim-impact statement may include "any other relevant information."  *Id.*  Again, the Fourth Circuit has determined this statutory text leaves room for victim-impact evidence from persons who are not family members of the victim.  *See Runyon*, 707 F.3d at 501.  Interpreting the relevant provision of the FDPA, *Runyon* held that "the text of this provision is illustrative rather than exhaustive, identifying some kinds of aggravating factors and evidence that the prosecution's notice to the defendant '*may* include' and concluding with a catchall permitting the prosecution to present 'any

other relevant information.'"  *Id.* (quoting 18 U.S.C. § 3593(a)).  The Court therefore declines to find that the FDPA categorically precludes the prosecution from introducing evidence regarding the impact of the victims' deaths on persons outside their families.

Defendant's reliance on *United States v. Bin Laden*, 126 F. Supp. 2d 290 (S.D.N.Y. 2001), for his overbreadth and vagueness arguments does little to support his argument.  The *Bin Laden* opinion determined a non-statutory aggravating factor alleging "serious injury to surviving victims" was "entirely and wholly subsumed" by the victim-impact evidence factor in the context of addressing whether the death notice adequately informed the defendants of the evidence against them during the penalty phase of a capital trial.  *Id.* at 300.  Whatever persuasive value the opinion holds is minimal in light of *Runyon*, where the Fourth Circuit upheld this factor over vagueness and overbreadth challenges.  707 F.3d at 501-03.

For these reasons, the Court denies Defendant's challenge to the extent that it seeks to categorically bar non-family member witnesses from testifying during the penalty phase.  This ruling, of course, does not preclude Defendant from moving to exclude testimony from a particular non-family member under either the Eighth Amendment or the FDPA's evidentiary standard.  *See, e.g.*, *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (per curiam) (clarifying that *Booth v. Maryland*'s holding that "the admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment" remains the law); *United States v. George*, 477 F. Supp. 3d 532, 540 (E.D. La. 2020) (reserving right to defendants to challenge particular testimony under the FDPA's provision at 18 U.S.C. § 3593(c)).

v. Lack of Remorse

Defendant also challenges the NOI's non-statutory lack-of-remorse factor.  Dkt. 726, 37-38.  In *United States v. Caro*, 597 F.3d 608, 630 (4th Cir. 2010), the Fourth Circuit strongly suggested, even if it did not hold outright, that applying the lack-of-remorse aggravating factor in a capital case violates the Fifth Amendment when the prosecution relies on a defendant's silence.  *See id.* ("[T]he Fifth Amendment may well prohibit considering a defendant's silence regarding the non-statutory aggravating factor of lack of remorse.").  Assuming for the sake of argument that the Government sought to do that in this case, striking this aggravating factor from the NOI would be a straightforward exercise.  But the prosecution in this case has indicated that it intends to put forward evidence of affirmative acts evincing Defendant's alleged lack of remorse, evidence that does not pose the same sort of constitutional concern as silence.  *See id.* at 631 (observing that "affirmative conduct displaying lack of remorse was significant and telling").  As a result, Defendant's objections to this non-statutory aggravating factor do not warrant striking it from the NOI.

vi. Pattern of Criminal Activity

Next, Defendant moves to strike a non-statutory aggravating factor from the Notice of Intent related to a pattern of criminal activity preceding the alleged murder of S.A.A.T.  Dkt. 758, 9-10.  Defendant emphasizes that this factor is impermissibly duplicative and that it is, in reality, a mitigator disguised as an aggravator.  In addition, Defendant seeks to strike the Notice of Intent's reference to his belief that E.E.E.M. was "a member of a rival gang."  *Id.* at 9 (quoting Dkt. 425 ¶ VI(A)(3)).

Defendant's duplication argument proceeds as follows.  The non-statutory aggravating factor the Notice of Intent sets forth at paragraph VI(A)(3) uses the kidnapping and murder of

E.E.E.M., crimes charged in Counts Five and Seven of the Second Superseding Indictment, as grounds for sentencing Defendant to death for the kidnapping and murder of S.A.A.T., crimes charged in Counts Six and Eight.  Specifically, Defendant "objects to the recasting of Counts [Five] and [Seven] as a basis to impose death on Counts [Six] and [Eight,]" arguing that the Notice of Intent is unconstitutionally duplicative "[b]ecause both murders have been charged capitally and are each separately listed in the Notice of Intent[.]"  Dkt. 758, 9.

For its part, the Government argues that it does not attempt to duplicate aggravating factors, but rather seeks to "have the jury consider the kidnapping and murder of E.E.E.M. as evidence of the pattern of violent criminal activity that preceded [Defendant's] participation in the kidnapping and murder of S.A.A.T."  Dkt. 777, 3.  The Court, then, must determine whether a non-statutory aggravating factor alleging a pattern of violent criminal activity may be submitted to the jury at the penalty phase when the basis for applying that factor is the jury's guilt-innocence phase determination that Defendant committed the first of two murders.

Although *Higgs* does not squarely answer the question, it comes close.  There, the Fourth Circuit held that the "Eighth Amendment does not prohibit the use of an aggravating factor during the sentencing phase that duplicates one or more elements of the offense of the crime found at the guilt phase."  *United States v. Higgs*, 353 F.3d 281, 315 (4th Cir. 2003).  The analysis in *Higgs* extends to what the Government seeks to do in this case, which is asking the jury to use a conviction from the guilt-innocence phase to support an aggravating factor at the penalty phase of a capital trial.  Mindful that an overlapping aggravating factor that "permits and results in cumulative findings of more than one of the . . . circumstances as an aggravating factor is constitutional error," *Tipton*, 90 F.3d at 899, the Court will not allow "double counting" of aggravating factors at trial.  *United States v. Stitt*, 760 F. Supp. 2d 570, 583 (E.D. Va. 2010)

(recognizing such double counting, "especially under a weighing scheme, has a tendency to skew the weighing process").  Importantly, however, "[t]here is no double-counting when the jury considers each aggravating factor once for each crime."  *United States v. Sampson*, 275 F. Supp. 2d 49, 107 (D. Mass. 2003).  And "[g]enerally, non-statutory aggravating factors based on contemporaneous or simultaneous convictions are not prohibited."  *United States v. Barnes*, 532 F. Supp. 2d 625, 630 (S.D.N.Y. 2008).  In light of *Higgs* and these authorities, the Court denies Defendant's motion to strike in its entirety the non-aggravating factor related to his alleged pattern of violent criminal activity.

Defendant also argues that the Notice of Intent's allegation that he murdered E.E.E.M. with the belief that the victim belonged to a rival gang should be stricken because it does not meaningfully narrow the class of persons eligible for the death penalty in that it actually forms the basis of a statutory mitigating factor.  *See* Dkt. 758, 9-10 (citing 18 U.S.C. § 3592(a)(7)).  In support of his position, Defendant cites cases involving victims' knowing and voluntary participation in federal crimes such as drug trafficking.  Dkt. 758, 9-10 (citing *United States v. Aquart*, No. 3:06CR160, 2012 WL 603243, at *8 (D. Conn. Feb. 24, 2012); *United v. Johnson*, 403 F. Supp. 2d 721, 871 (N.D. Iowa 2005); *United States v. Beckford*, 962 F. Supp. 780, 793 (E.D. Va. 1997)).  None of the authorities Defendant cites justify striking the reference in the Notice of Intent, and the Court therefore denies his request.

### vii. Commission of Crimes to Advance within MS-13

Defendant also challenges the charged non-statutory aggravating factor that he "committed the offense in part to increase or maintain his position in MS-13."  Dkt. 758 (citing Dkt. 425 ¶ III(B); 7 ¶ VI(B)).  According to Defendant, this non-statutory factor is constitutionally defective because it does not "genuinely narrow the class of persons eligible for the death penalty" and fails

to "reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant*, 462 U.S. at 877.  Defendant's first argument obscures the fact that only *statutory* aggravating factors narrow the class of persons subject to the death penalty. *Higgs*, 353 F.3d at 320.  "Once a defendant has been rendered eligible for the death penalty by the jury's finding of a statutory aggravating factor, the use of nonstatutory aggravating factors serves only to individualize the sentencing determination." *Id.*  Thus, his challenge to this aggravating factor on the basis that it fails to genuinely narrow the class of death-eligible persons fails.

Neither can the Court accept Defendant's argument that this factor may lead the jury to mistakenly believe that his membership in MS-13 alone warrants imposing a death sentence. *See* Dkt. 758, 11 (citing risk that factor would "mislead the jury into believing that being a member of MS-13 in and of itself always justifies a sentence of death").[2]  Instead, the Government indicates that it will attempt to demonstrate Defendant committed violent crime for the purpose of advancing within MS-13.  That conduct, criminalized by federal law, demands a showing distinct from merely proving gang membership. *See* Dkt. 777, 6 (citing *United States v. Keene*, 955 F.3d 391, 394 (4th Cir. 2020)).  For these reasons, this particular non-statutory aggravating factor is permissible.

### viii. Future Dangerousness

Additionally, Defendant objects to the non-statutory aggravating factors alleging his future dangerousness as overbroad and duplicative, arguing they must be stricken from the Notice of Intent.  Dkt. 758, 11-13.  In Defendant's view, this factor as written "does not account for the fact that, if convicted of any of the capital counts in the indictment, but spared the death penalty, [he] will spend the rest of his life in a maximum-security Federal penitentiary."  Dkt. 758, 11.

---

[2] The Court reserves any particular decision regarding the contents of an appropriate jury instruction until a later date.

23

Defendant cites *Simmons v. South Carolina*, 512 U.S. 154 (1994), to support his argument that "an allegation of future danger means future danger while in prison, not 'in any setting.'"  Dkt. 758, 11-12 (citing *Simmons*, 512 U.S. 154).  The *Simmons* Court did hold that when a "defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible."  512 U.S. at 156.  Still, this holding falls short of requiring that a future dangerousness aggravating factor included in a death notice be styled as "in prison" rather than "in any setting."  512 U.S. 156.  As a result, the Court will not strike this factor from the Notice of Intent on this basis.

Neither will the Court strike the future dangerousness factors as duplicative of the pattern of violent crime factor set forth in the Notice of Intent.  The factors do not "necessarily subsume" each other, which is the standard this Court applies to determining whether two aggravating factors are unconstitutionally duplicative.  *Stitt*, 760 F. Supp. 2d at 583 (E.D. Va. 2010).  A jury would not necessarily need to find one in order to find the other, whether or not some evidence may be offered to support both factors.  *See Jones v. United States*, 527 U.S. 373, 399 (1999).  The Government is not required to opt for one or the other, and the Court denies Defendant's request seeking to compel that choice.

Defendant's objections to the future dangerousness aggravating factors also implicate whether certain jury instructions may be proper.  Although the parties appear to agree that this aggravating factor may be explained to the jury in the context of the defendant's ineligibility for parole if he is convicted of a crime for which the only alternative to a death sentence is life imprisonment without the possibility of parole, they disagree as to whether a prison-setting limitation is also appropriate.  *See* Dkt Nos. 758; 777.  Recognizing that district courts are split over whether such a limiting instruction should be given in a capital case, the Government argues

that the Court should not further instruct the jury because Defendant "could escape, he could be pardoned, his sentence could be commuted, or he might be transferred out of a Bureau of Prisons ('BOP') facility for a medical procedure."  Dkt. 777, 9.[3]

This Court, however, has acknowledged "the Federal Death Penalty Act envisions that judges will continue to play a 'gatekeeping' role at the penalty phase of a capital trial, and that considerations of unfair prejudice to defendant at sentencing must be taken into account."  *Stitt*, 760 F. Supp. 2d at 579 (quoting *United States v. Frank*, 11 F. Supp. 2d 314, 318 (S.D.N.Y. 1998)). To guard against any undue risk of prejudice that may result at sentencing in a capital case, the Court reserves its prerogative to issue an instruction limiting future dangerous evidence to prison-setting evidence if Defendant is found guilty at the guilt-innocence phase, in keeping with the many other district courts that have done so.  *See, e.g.*, *United States v. Montgomery*, 10 F. Supp. 3d 801, 840 (W.D. Tenn. 2014) ("[T]he Government cannot argue that the jury should consider Defendant's potential future dangerousness in non-prison settings.); *United States v. Wilson*, 923 F. Supp. 2d 481, 490 (E.D.N.Y. 2013) ("[T]he court will take any necessary measures to ensure that the [j]ury's consideration [of future dangerousness] is limited to the expected circumstances of [Wilson]'s confinement should the death penalty not be imposed, . . . that is, life imprisonment in a maximum-security facility without the prospect of release."); *United States v. O'Reilly*, 545

---

[3] Similar arguments have been met with skepticism before.  *See United States v. Duncan*, No. CR07-23-N-EJL, 2008 WL 711603, at *11 (D. Idaho Mar. 14, 2008) ("The Government's argument that there is a possibility that the Defendant may escape from prison is illusory and too speculative to justify expanding the scope of this evidence."); *United States v. Rodriguez*, No. 2:04-CR-55, 2006 WL 487117, at *5 (D.N.D. Feb. 28, 2006) ("The threat that [the defendant] may escape, be pardoned, or have his sentence commuted is simply illusory.").

F. Supp. 2d 630, 638 (E.D. Mich. 2008) (internal citation and quotation marks omitted) (noting the then-unanimous agreement of district courts on this question).[4]

For the foregoing reasons, the Court does not strike the future dangerousness factors from the Notice of Intent.

### C. Motion to Strike the Death Penalty as a Sentence Option

Defendant requests that the Court declare that the federal death penalty in general is unconstitutional and strike the Notice of Intent to seek a death sentence. *See* Dkt. 727. Defendant advances several primary arguments as to why the death penalty as a sentencing option is unconstitutional: (1) the death penalty is unreliable; (2) the death penalty is imposed arbitrarily and capriciously; (3) when it is imposed, the death penalty is deployed with racial disparity and results in bias against racial and ethnic minorities; and (4) unconscionably long delays frustrate the death penalty's penological purpose. *See* Dkt. 730.

A death sentence is "unique [among criminal sentences] in its . . . irrevocability," *Gregg*, 428 U.S. at 187, which makes it, of course, the "most severe punishment," *Roper v. Simmons*, 543 U.S. 551, 568 (2005). Although "it is settled that capital punishment is constitutional," *Glossip*, 576 U.S. at 869, the Eighth Amendment's prohibition on "cruel and unusual punishments" and "protection of human dignity," *Hall v. Florida*, 572 U.S. 701, 708, (2014), require a "heightened need for reliability in the determination that death is the appropriate punishment in a specific case." *Caldwell v. Mississippi*, 472 U.S. 320, 323 (1985) (quotation marks omitted).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments[.]" U.S. Const. amend. VIII. Though "the words of the Amendment are not precise, and [] their scope is

---

[4] The parties may submit and object to proposed jury instructions in the context of a forthcoming scheduling order and hearing on same.

not static[,]" the Eighth "Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) (plurality opinion); *accord Atkins v. Virginia*, 536 U.S. 304, 311-312 (2002).  Defendant observes that many states have eliminated the death penalty altogether.  *See* Dkt. 730, 127-30.  And after the parties fully briefed this matter, the Commonwealth of Virginia enacted legislation formally abolishing capital punishment as a sentencing option in any criminal case effective July 1, 2021.[5] But in determining whether application of the death penalty no longer survives Eighth Amendment scrutiny, "[i]t is not so much the number of these States that is significant, but the consistency of the direction of change."  *Atkins*, 536 U.S. at 315 (2002).  Thus, the question is whether societal standards of decency have evolved to the point that this Court may now conclude the death penalty is *per se* cruel and unusual punishment.  Based on Supreme Court precedent, they have not.  *See, e.g.*, *Glossip*, 576 U.S. at 869; *Gregg*, 428 U.S. at 181-87.

Defendant also urges that "the doctrine of *stare decisis* does not limit this Court's action." Dkt. 727, 137.  The Court rejects this contention.  *See Ramos v. Louisiana*, 140 S. Ct. 1390, 1416 n.5 (2020) (Kavanaugh, J., concurring) ("[V]ertical *stare decisis* is absolute, as it must be in a hierarchical system with 'one supreme Court.'" (quoting U. S. Const., art. III, § 1)).  Because the Court declines to depart from settled law holding the death penalty constitutional, the Court's denial of Defendant's request to contravene settled precedent also disposes of each of his other grounds for striking the death penalty as a sentencing option, all of which have either been foreclosed outright by binding precedent or rejected repeatedly by other courts.  *See, e.g.*, *Herrera v. Collins*, 506 U.S. 390, 415 (1993) (unreliability); *Gregg*, 428 U.S. at 195 (1976) (arbitrariness);

---

[5] *See* 2021 Virginia Laws 1st Sp. Sess. Ch. 344 (H.B. 2263), https://lis.virginia.gov/cgi-bin/legp604.exe?212+ful+CHAP0344 (last visited May 5, 2021).

*id.* at 193 (challenges to death-qualified juries' propensity to convict or inability to follow instructions); *United States v. Mitchell*, 502 F.3d 931, 983 (2007) (rarity of the death penalty being sought or imposed); *McCleskey v. Kemp*, 481 U.S. 279, 306-07 (1987) (absence of principled basis for distinguishing between cases that impose death penalty and those that do not); *id.* at 312-15 (racial bias); *Turner v. Jabe*, 58 F.3d 924, 930 (4th Cir. 1995) (unconscionable delay); *Bucklew v. Precythe*, 139 S. Ct. 1112, 1122 (2019) (societal standards).

### D. Motion for Informative Outline of Aggravating Factors

In his reply brief in support of his Motion for Informative Outline of Aggravating Factors, Defendant acknowledges that the Government's response, taken together with the Indictment and Notice of Intent, moots the motion as to all but two of the aggravating factors. *See* Dkt. 756. Defendant still seeks an informative outline as to the two non-statutory aggravating factors related to the "vast" category of victim-impact evidence. *Id.* at 4 (quoting *Bin Laden*, 126 F. Supp. 2d at 304). Noting that this type of evidence is by its nature not static, the Government argues that ordering an informative outline as to these aggravating factors would be premature given that the nature of the evidence today may differ from how it is ultimately presented at trial. *See* Dkt. 741.

The Court denies Defendant's Motion for Informative Outline as moot as to all aggravating factors except the non-statutory aggravators set forth at ¶ III(E) and ¶ VI(G)) of the Notice of Intent. The Motion for Informative Outline is denied at this time. Furthermore, the trial in this capital case is set to begin approximately 11 months from now. If Defendant believes he still lacks sufficient notice to prepare and present an adequate defense to these two non-statutory aggravating factors as trial approaches, he may renew the motion as to these factors alone.

### E. Motion for Rule 5(f) Order

Defendant moved the Court for an order pursuant to Federal Rule of Criminal Procedure 5(f), as amended by the Due Process Protections Act, which became law on October 21, 2020. Pub. L. No. 116-182, 134 Stat. 894.  Defendant also asked the Court to include additional language regarding the "timely disclosure of exculpatory evidence."  Dkt. 759. [6]  The Government does not object to the Court entering this District's standard Rule 5(f) order but objects to any added language as it goes beyond the new law's requirements.  Dkt. 762.  After considering the parties' briefing and the arguments presented at the hearing, on April 15, 2021, the Court granted Defendant's motion to the extent he seeks entry of the standard Rule 5(f) order.  Dkt. 853.

### F. Motion to Compel Production of Discovery

Citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and Federal Rule of Criminal Procedure 16, Defendant seeks to compel disclosure of: (1) grand jury testimony transcripts of those who testified about Defendant's conduct or life history; (2) FBI Form 302s and other law enforcement reports, including notes of interviews conducted with those who were questioned regarding Defendant's conduct or life history; (3) testimony and reports of eyewitnesses to the murders; (4) all "life history" records collected by the Government; and (5) all pretrial detention records in the Government's possession through a Motion to Compel Production of Discovery Under Fed. R.

---

[6] The Court declines to grant Defendant's request for a Rule 5(f) order that adds language regarding timely disclosure, but a necessary corollary of any prosecutor's continuing obligation to disclose *Brady* material is that these disclosures be made "in time for its effective use at trial." *United States v. Lowery*, 284 F. App'x 64, 69 (4th Cir. 2008) (quoting *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985)).  In addition, this Court has recognized that when it comes to "the timing of disclosure under *Brady*[,]" "the timing decision will differ from case to case[,]" while cautioning that the timeliness decision "requires consideration of factors beyond those which benefit only a defendant."  *Beckford*, 962 F. Supp. at 793.  In a capital case, where the defense performs an extensive investigation to assemble penalty-phase mitigation evidence, among other tasks, the defendant's interest and the "fundamental societal interest in a fair trial" justify prompt disclosure of evidence that is not "pure impeachment material."  *Id.*

Crim. P. 16 and *Brady* Line of Cases ("Motion to Compel").  Dkt. 760.  Defendant also requests that the Court order the Government to produce summaries of expert testimony for each of the forensic areas of evidence the Government intends to introduce at trial, along with lab reports; certain law enforcement agents' drafting notes; and documents mentioned in discovery but not yet disclosed.

Based on the Government's Opposition and Defendant's Reply (Dkt Nos. 764; 768), the Court denies, as moot, Defendant's Motion to Compel insofar as it seeks all life history records collected by the Government, all pretrial detention records the Government has in its possession, chain-of-custody forms, and bench notes made by expert witnesses.  These materials have already been produced, and any new documents falling within these categories will be similarly produced. *See* Dkt. 764.

The Court also denies Defendant's Motion to Compel to the extent it seeks to compel early disclosure of summaries of expert testimony, forensic laboratory reports that fall within Federal Rule of Criminal Procedure 16(a)(1)(F), law enforcement reports, and certain law enforcement drafting notes.  A new scheduling order will address disclosure deadlines for most, if not all, of these materials.  As for the various assessments, policies, procedures, and schematics Defendant requests at pages 9-10 of his Motion to Compel, the Government aptly notes that neither Federal Rule of Criminal Procedure 16 nor any controlling authority requires those materials to be produced.  *See* Dkt. 764, 16.  The Court denies the Motion to Compel to the extent it seeks to discover those documents.

Defendant also seeks to compel disclosure of certain documents that have been mentioned in discovery but not yet produced.  The Court will not comment on those items the Government has identified—without objection from Defendant in his reply—as having already been provided,

not in the Government's possession, or not in existence.  *See* Dkt Nos. 764; 768.  This leaves for the Court's resolution Defendant's request for an unredacted report and the immigration files of the victims or their mothers.  *See* Dkt 764, 11-12.  Yet Defendant has failed to establish these documents are relevant, let alone material, to his defense such that disclosure could be compelled under *Brady*, Rule 16, or another authority.  The Court will therefore deny the Motion to Compel as to all documents Defendant identifies as having been mentioned in discovery but not yet produced.

The Court views the Grand Jury testimony transcripts concerning Defendant's conduct and life history in a different light.  The Government maintains that because no Grand Juror has provided favorable evidence, this material need not be disclosed under *Brady* or Rule 16.  Dkt. 764, 9.  The prosecution also argues that none of this evidence would significantly "alter the quantum of proof" in Defendant's favor, which means the transcripts are not material and are thus not discoverable under Federal Rule of Criminal Procedure 16(a)(1).  *Id.* (quoting *Caro*, 597 F.3d at 621).

In a capital case, however, penalty-phase evidence may include mitigation material that speaks to any "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."  *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).  Because mitigation in the capital context has "virtually no limits," *Tennard v. Dretke*, 542 U.S. 273, 285 (2004), the door must remain open to any evidence that may be admitted as "favorable to an accused . . . either to guilt or to *punishment*."  *Brady*, 373 U.S. at 87 (emphasis added).  The mere fact that evidence may not be exculpatory in the sense that it could not possibly exonerate a defendant at the guilt-innocence stage does not end the *Brady* inquiry in a capital case.  If a defendant is found guilty, he is entitled to present evidence at the subsequent

penalty phase of his case, including certain factors the FDPA sets forth at 18 U.S.C. § 3592(a).
These factors include aspects of his "background, record, or character or any other circumstance
of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a). The
statute provides that "the finder of fact shall consider" these and other mitigating factors "[i]n
determining whether a sentence of death is to be imposed on a defendant." *Id.*

Defendant requests information that is relevant to certain statutory mitigating factors the
FDPA expressly contemplates, *see, e.g.*, 18 U.S.C. §§ 3592(a)(1)-(4), (7)-(8). In addition, he has
"identif[ied] the requested confidential material with some degree of specificity." *United States
v. Trevino*, 89 F.3d 187, 189 (4th Cir. 1996). Defendant sets forth that he has reason to believe the
grand jury testimony of "family members, friends, employers, co-workers, [and] peers"—as well
as the testimony of "eyewitnesses to the murder"—may contain *Brady* material. *See* Dkt. 760, 8.
Accordingly, he has made a "plausible showing" that the undisclosed information may contain
information material to sentencing, which satisfies the materiality standard under Fourth Circuit
case law. *United States v. King*, 628 3d 693, 703 (4th Cir. 2011) (citing *Basden v. Lee*, 290 F.3d
602, 611 (4th Cir. 2002)).

That Defendant has made this plausible showing does not necessarily mean he is entitled
to compelled disclosure of the materials, however. Instead, the proper course is for the Grand Jury
testimony to be "'submitted to the trial court for *in camera* inspection' to determine if in fact the
information is *Brady* material subject to disclosure." *Love v. Johnson*, 57 F.3d 1305, 1313 (4th
Cir. 1995). In keeping with this procedure, the trial court "conducts its examination in private
because the Constitution does not accord an accused the right of unrestricted access to the
government's files." *Trevino*, 89 F.3d at 190.

Defendant's interest in gaining access to potential *Brady* material is not the sole reason the Court orders this limited *in camera* inspection.  The Court orders *in camera* review to protect the Government's interest in maintaining the secrecy of the Grand Jury and its witnesses.  "[J]udges have long enjoyed wide discretion to inspect grand jury testimony 'where a particular need is shown,' . . . in part because the *in camera* procedure effectively safeguards the government's interest in the preservation of grand jury secrecy."  *King*, 628 F.3d at 703 n.5 (quoting *United States v. Bryant*, 364 F.2d 598, 600 (4th Cir. 1966) and citing *In re Grand Jury Subpoena*, 884 F.2d 124, 126 (4th Cir. 1989)).

In addition, the Court will examine certain Grand Jury testimony *in camera* in light of binding authority in which the Fourth Circuit has made clear that when a defendant makes a plausible showing, the consequence of a district court's failure to conduct such a review may be vacating the defendant's conviction.  *See United States v. Abdallah*, 911 F.3d 201, 217-19 (4th Cir. 2018) (reversing conviction where defendant made showing that documents "plausibly contained materially favorable evidence" and district court refused to conduct *in camera* review); *King*, 628 F.3d at 702-04 (4th Cir. 2011) (reversing conviction where defendant requested grand jury testimony and district court failed to conduct *in camera* inspection).  And *Trevino* leaves little doubt that a district court must make such factual findings through *in camera* review if a defendant makes a plausible request: "Once the accused has made a plausible showing that the evidence would be both material and favorable, the trial court must review the information *in camera* to ascertain its true nature and determine whether it must be disclosed."  89 F.3d at 190 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987)).

Whatever the scope of the Fourth Circuit's rule with respect to *in camera* review of material that is arguably *Brady* material in a capital case, it surely is at least as broad as the standard outlined

33

in the non-capital cases of *Abdallah*, *King*, and *Trevino*. In addition, the standard of review applied in *Caro* buttresses the Fourth Circuit's instruction that district courts should adhere to this procedural safeguard when a defendant makes a proper showing. *Caro*, 597 F.3d at 616 & n.10 (reviewing district court findings *de novo* rather than for clear error where trial court, unlike the district court in *Trevino*, failed to conduct *in camera* review before ruling on a motion to compel). At this time, the Court limits the *in camera* review to Grand Jury testimony and will not inspect any law enforcement reports, interview notes, or any other materials Defendant seeks to discover.

The Court denies the Motion to Compel to the extent it seeks a protective order at this time. The parties are, however, directed to meet and confer to reach an acceptable resolution regarding the sensitive materials referenced in Defendant's Motion to Compel that balances defense counsel's interest in readily accessing those documents and the Government's interest in protecting its witnesses. Should the parties be unable to resolve their differences, the Court will entertain a motion for a status conference at an appropriate time.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion to Strike the Death Penalty (Dkt. 724) is DENIED; and

IT IS FURTHER ORDERED that Defendant's Challenges and Additional Challenges to Notice of Intent to Seek the Death Penalty (Dkt. Nos. 726; 758) are DENIED; and

IT IS FURTHER ORDERED that Defendant's Motion to Strike the Death Penalty as a Sentence Option (Dkt. 727) is DENIED; and

IT IS FURTHER ORDERED that Defendant's Motion for Informative Outline of Aggravating Factors (Dkt. 728) is DENIED; and

IT IS FURTHER ORDERED that Defendant's Motion to Compel Production of Discovery Under Federal Rule of Criminal Procedure 16 and *Brady* Line of Cases (Dkt. 760) is GRANTED in part and DENIED in part.  The Government shall begin to produce the selected Grand Jury testimony transcripts for *in camera* review within 30 days of the entry of this order.

It is SO ORDERED.

Alexandria, Virginia
May 5, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge

35