IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cr-00123-RDA-02 |
| | ) | |
| ELMER ZELAYA MARTINEZ, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
*IN LIMINE* TO LIMIT OR PRECLUDE GOVERNMENT'S MS-13 EXPERT WITNESS**

Like several of his co-defendants, Defendant Elmer Zelaya Martinez ("Zelaya") asks the Court to preclude the government from calling an expert witness to educate the jury on MS-13's history, organization, leadership, structure, slang, rules, practices, and operations.[1] In so doing, Zelaya ignores the salient fact that for more than a decade, and as recently as two months ago, this Court has endorsed the government doing just that in RICO and VICAR prosecutions. *See, e.g.*, *Montoya v. United States*, No. 1:09-cr-247-CMH, 2013 WL 633586, at *1, *11 (E.D. Va. Feb. 19, 2013) (noting that government had called MS-13 gang expert at trial in 2010, and explaining that such experts "are frequently employed by the government in prosecutions of MS-13 members"). Instead, Zelaya principally argues that the government's proffered gang expert in this case, Detective Sergeant Ricardo Guzman, should be barred from testifying because he hails from Texas and not Northern Virginia. This novel claim fails, just like the other arguments—

---

[1] Defendant Pablo Velasco Barrera ("Velasco") has filed a motion to strike the government's noticed gang expert, *see* Docket Entry ("DE") 1089, which Defendants Ronald Herrera Contreras and Henry Zelaya Martinez have moved to adopt, *see* DEs 1095, 1096. The government opposes Velasco's motion. *See* DE 1091.

previously made by his co-defendants—that Zelaya regurgitates.  His motion, too, should be denied.

## ARGUMENT

Zelaya's motion *in limine* proceeds from a series of assumptions—that any gang expert the government might wish to call must be an authority on the particular clique to which Zelaya belongs; that a law enforcement officer with years of experience investigating homicides committed by MS-13 and a cooperating defendant are fungible; that a gang expert is necessarily little more than a transmitter of testimonial hearsay.  Each of these suppositions is unfounded.

**I.   WHERE SERGEANT GUZMAN PRIMARILY WORKS DOES NOT CONTROL WHETHER HE CAN BE PROPERLY QUALIFIED AS A GANG EXPERT**

Zelaya asserts that Sergeant Guzman, as a law enforcement officer based in Houston, Texas, "has no experience or basis of knowledge with respect to the workings of MS-13 in Virginia, specifically, MS-13 cliques in Northern Virginia."  DE 1102 at 1.  That is not true; Sergeant Guzman has, in fact, worked on MS-13 investigations with a nexus to Northern Virginia.  But even if Zelaya were correct, it would be of no moment, because for purposes of this trial, it is not necessary for the government's expert on MS-13 to be based in Northern Virginia.  MS-13, after all, has its tentacles in virtually every state in this country and in several other nations.  *See* DE 162 at 2 (alleging that "MS-13 members and associates are located throughout the United States, including in Virginia, Maryland, Ohio, Texas, New York, and California[,]" and that "MS-13 also has a large international presence in El Salvador, Guatemala, Honduras, and Mexico").  Moreover, and more importantly, substantial portions of the second superseding indictment—specifically, paragraphs 2–7 and 11–14—concern MS-13 broadly

conceived and are not clique-specific. That makes sense, given that the racketeering enterprise specifically alleged in Counts One, Two, Five, and Six is MS-13, not PVLS or any other clique.[2]

To be sure, in most MS-13 trials, the government's gang expert is more local than Sergeant Guzman is here. That is likely the product of where the majority of a given prosecutor's or agent's contacts are based and the efficiencies that attend working with local witnesses versus those who are farther flung. It is not, however, a consequence of the sort of geographic restriction that Zelaya envisions. Case in point: in this Circuit, multiple MS-13 defendants' convictions were affirmed on appeal following trials in which the government called a Los Angeles Police Department detective as a gang expert. *See United States v. Umana*, 750 F.3d 320 (4th Cir. 2014); *United States v. Argueta*, 470 F. App'x 176 (4th Cir. 2012); *United States v. Ayala*, 601 F.3d 256 (4th Cir. 2010); *cf. Silva v. State,* 28 A.3d 1226 (Md. 2011) (affirming MS-13 defendant's murder convictions following trial in which detective from Virginia testified as state's gang expert). These decisions underscore the propriety of the government's intention to call Sergeant Guzman as a gang expert in this case.

## II. NO COOPERATING WITNESS'S KNOWLEDGE OF MS-13 IS COEXTENSIVE WITH SERGEANT GUZMAN'S

In support of his bid to ding Sergeant Guzman, Zelaya contends that the government can obtain testimony equivalent to that which Sergeant Guzman would offer from cooperating witnesses who were previously affiliated with MS-13. *See* DE 1102 at 8 ("[The government's

---

[2] The government has no doubt that if, at trial in this case, it were to eschew the introduction of evidence about MS-13 generally in favor of adducing evidence only about particular cliques, the defendants would be quick to move for judgments of acquittal, claiming that the government had failed to prove an essential element of the VICAR charges—namely, the existence of an enterprise engaged in, or the activities of which affect, interstate or foreign commerce. The Court should not permit the defendants to set up the government to fail in this way.

cooperating witnesses] are all likely to possess the same knowledge that the Government seeks to illicit [sic] through Sergeant Guzman's 'expert' testimony."). This is false. It requires no great imaginative leap to understand that someone who spent perhaps a couple of years associating with one clique in one sliver of Northern Virginia has neither the breadth nor depth of knowledge possessed by someone who, like Sergeant Guzman, has devoted over eight years to the exclusive investigation of MS-13-related crimes, has participated in over 100 interviews of MS-13 members and associates, and has previously testified as an expert on MS-13 in multiple criminal trials. *See* Ex. A (summarizing Sergeant Guzman's anticipated testimony and enumerating some of his pertinent credentials). In this case, it is simply not true that a cooperating witness is a sufficient substitute for a gang expert.

### III. SERGEANT GUZMAN'S ANTICIPATED TESTIMONY POSES NO RISK OF VIOLATING ZELAYA'S CONFRONTATION CLAUSE RIGHTS OR THE FEDERAL RULES OF EVIDENCE

Like his co-defendants, Zelaya fears that his Sixth Amendment right to confront witnesses against him will be compromised if Sergeant Guzman is allowed to testify. This apprehension is misplaced. While the Confrontation Clause bars the introduction of testimonial hearsay as evidence in itself, Zelaya overlooks that much of what Sergeant Guzman has gleaned about MS-13 over his many years investigating the gang comes from his analysis of *non-testimonial* hearsay—e.g., conversations with fellow gang investigators, reports and briefing materials regarding MS-13, intercepted calls between MS-13 members and associates, lectures attended in El Salvador, etc. As for the portion of Sergeant Guzman's basis of knowledge that peripherally derives from testimonial hearsay (namely, custodial interviews with MS-13 members and associates), so long as he is not merely functioning as a conduit for that hearsay, there will be no Confrontation Clause violation. That is because *Crawford v. Washington*, 541 U.S. 36 (2004), in which the Supreme Court held that playing out-of-court testimony to a jury

without a chance for cross-examination violates a defendant's rights under the Sixth Amendment, "in no way prevents expert witnesses from offering their independent judgments merely because those judgments were in some part informed by their exposure to otherwise inadmissible evidence." *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009).

In pressing his argument, Zelaya resurrects *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008). The government has previously explained why *Mejia* is inapposite and cited numerous cases postdating that decision in which the Fourth Circuit has affirmed MS-13 defendants' convictions following trials in which the government called a gang expert. *See* DE 397 at 2–3; DE 1091 at 3–4. Nevertheless, in the hope of permanently laying this zombie to rest, the government addresses *Mejia* at greater length.

In that case, the defendants, members of MS-13, faced multiple VICAR charges. 545 F.3d at 183. At trial, the government called an officer with the New York State Police to testify about MS-13's history and structure as well as the gang's activities on Long Island. *Id.* at 184–85. As a general matter, the Second Circuit took no issue with gang experts testifying about the operations, symbols, jargon, and internal structure of criminal organizations:

> Officers interact with members of the organization, study its operations, and exchange information with other officers. As a result, they are able to break through the group's antipathy toward outsiders and gain valuable knowledge about its parochial practices and insular lexicon. Allowing law enforcement officers to act as experts in cases involving these oft-impenetrable criminal organizations thus responds to the same concerns that animated the enactment of the criminal laws that such organizations (and their members) are typically charged with violating, such as the Racketeer Influenced and Corrupt Organizations Act, and the . . . Violent Crimes in Aid of Racketeering Act[.]

*Id.* at 190 (citations omitted). It is only when "[t]he officer expert transforms into the hub of the case, displacing the jury by connecting and combining all other testimony and physical evidence into a coherent, discernible, internally consistent picture of the defendant's guilt" that utilizing a gang expert contravenes the Federal Rules of Evidence. *Id.* at 190–91.

Several aspects of the gang expert's testimony in *Mejia* differentiate it from that which Sergeant Guzman is expected to provide in this case. For one thing, the gang expert there testified about specific information concerning a drug tax imposed by the gang that he learned from a custodial interview with a member of MS-13 conducted in the course of investigating the very offenses for which the defendants were standing trial. *Id.* at 188; *see also id.* at 191 (noting that it is problematic when gang expert "happens to be one of the Government's own investigators"). Clearly, Sergeant Guzman has nothing to do with the investigation of the defendants in this case or the crimes that they are alleged to have committed.

Moreover, the gang expert in *Mejia*, in what the Second Circuit found to be an "especially disturbing" portion of his testimony, *id.* at 195, testified that since he had joined the FBI's Long Island Gang Task Force five years earlier, the Task Force had seized "between 15 and 25" firearms from MS-13 members, and that during that same period, MS-13 had committed "between 18 and 22, 23" murders on Long Island, *id.* at 187. The court found that the gang expert, in so doing, "was acting as a de facto 'case agent' in providing this summary information to the jury (the case being the ongoing investigation into MS-13's activities on Long Island)." *Id.* at 196. By contrast, Sergeant Guzman will not be testifying about such "highly specific facts" that can be proven with competent evidence and lay witness testimony, *id.* at 195, nor will he be testifying about the defendants or any of the particular charges they face. Thus, whereas the gang expert in *Mejia* simply summarized an investigation done by others that was not part of the record and presented it in the guise of an expert opinion, here, Sergeant Guzman will be conveying to the jury information about MS-13 that results from his synthesis of various source materials consulted over the last eight years.

Not only does *Mejia* thus fall short of being the silver bullet that Zelaya represents it to be, there is an important coda that he misses. After the Second Circuit vacated the defendants' convictions and remanded the case to the district court, at least one of the defendants was retried and reconvicted. *See United States v. Castro*, 411 F. App'x 415, 417–18 (2d Cir. 2011). During the retrial, the government called an FBI special agent who testified as an expert on MS-13. *Id.* at 419. On appeal, the defendant claimed that the testimony violated his rights under the Confrontation Clause. *Id.* The Second Circuit rejected that argument:

> While some of the special agent's testimony may have relied on hearsay, we note that it is neither unusual nor improper for law enforcement officers who act as expert witnesses to routinely and reasonably rely upon hearsay in reaching their conclusions. The special agent's testimony was not based upon individual interviews with members of MS–13, but instead, on his experience with this organization and careful analysis of its operations. The District Court did not abuse its discretion in admitting this testimony.

*Id.* (internal quotation marks and citation omitted). The Court should do likewise here.

## IV.   A PRETRIAL HEARING IS UNNECESSARY

In his motion, Zelaya asks the Court to hold a *Daubert* hearing before trial to test whether Sergeant Guzman possesses adequate expertise. No such hearing is necessary; Sergeant Guzman is suitably qualified to testify as an expert on MS-13, *see generally* Ex. A, and the subject matter of his testimony is perfectly consistent with testimony previously deemed admissible under Rule 702, *see, e.g.*, *United States v. Bran*, 776 F.3d 276, 280 n.3 (4th Cir. 2015) (finding no abuse of discretion in denial of defendant's motion to exclude government expert's testimony concerning MS–13); *United States v. Palacios*, 677 F.3d 234, 244 (4th Cir. 2012) (upholding expert testimony regarding MS-13's "history, operation, structure, practices, and symbols"); *United States v. Lobo-Lopez*, 468 F. App'x 186, 191 (4th Cir. 2012) (approving of expert testimony regarding MS-13's "internal structure, rules, terminology, and methods"); *Ayala*, 601 F.3d at 274–75 (finding no error in admission of expert testimony regarding MS-13's "history, structure,

7

and practices" and gang's "general nature as a violent organization"); *United States v. Zelaya*, 336 F. App'x 355, 357 (4th Cir. 2009) (affirming defendants' convictions following trial that featured testimony of gang experts).

Significantly, Zelaya retains his ability to procure a rebuttal expert, to ask for permission to voir dire Sergeant Guzman, to cross-examine Sergeant Guzman, to request that the jury be given a limiting instruction following Sergeant Guzman's testimony, and to urge the jury in his closing argument to discount or disregard Sergeant Guzman's testimony. Under these circumstances, the Court need not schedule a time-consuming, resource-intensive *Daubert* hearing. The Supreme Court has stated that "the law grants a district court the same broad latitude when it decides *how* to determine [the] reliability [of expert testimony] as it enjoys in respect to its ultimate reliability determination," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). "It is clear," therefore, "that a court is not required to hold a hearing simply because a party has raised a *Daubert* issue." *United States v. Davis*, 602 F. Supp. 2d 658, 663 (D. Md. 2009).

Here, the Court's reliability determination—which, given that the prospective testimony involves no scientific testing or procedures, is essentially a question of relevance to the jury's factfinding task—can be made on the basis of the information presently before the Court. *Cf. United States v. Spotted Elk*, 548 F.3d 641, 663 (8th Cir. 2008) ("A *Daubert* hearing is not required where the record already establishes that the testimony is admissible."); *United States v. Jawara*, 474 F.3d 565, 582–83 (9th Cir. 2007) (finding that Rule 702 gatekeeping requirement can be satisfied without *Daubert* hearing and finding that district court did not err in relying on *in limine* briefing and argument of counsel in rendering its determination); *United States v. Willock*, 696 F. Supp. 2d 536, 548 (D. Md. 2010) (denying defendant's request for pretrial

*Daubert* hearing relating to government's gang expert), *aff'd sub nom. United States v. Mouzone*, 687 F.3d 207 (4th Cir. 2012).

## **CONCLUSION**

There is no reason to reserve ruling on Zelaya's motion *in limine*. For the reasons stated above, it can—and should—be denied.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
Rebeca H. Bellows
Alexander E. Blanchard
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
Fax: (703) 299-3982
becky.bellows@usdoj.gov
alexander.blanchard@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on April 12, 2022, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/
Alexander E. Blanchard
Assistant United States Attorney