1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF VIRGINIA
2            ALEXANDRIA DIVISION

3    --------------------------------x
                                     :
4    UNITED STATES OF AMERICA,       : Criminal Action No.:
                                     : 1:18-cr-123-RDA-4
5                                    :
            v.                       :
6                                    :
     ELMER ZELAYA MARTINEZ,          : November 2, 2022
7                                    :
                    Defendant.       :
8    --------------------------------x

9          TRANSCRIPT OF SENTENCING HEARING
        BEFORE THE HONORABLE ROSSIE D. ALSTON, JR.,
10          UNITED STATES DISTRICT COURT JUDGE

11              A P P E A R A N C E S

12   FOR THE GOVERNMENT:   ALEXANDER BLANCHARD, AUSA
                           CRISTINA C. STAM, AUSA
13                         United States Attorney's Office
                           2100 Jamieson Avenue
14                         Alexandria, VA 22314
     FOR THE DEFENDANT:    MANUEL LEIVA, ESQ.
15                         The Leiva Law Firm PLC
                           3955 Chain Bridge Rd
16                         2nd Floor
                           Fairfax, VA 22030
17

18

19

20
     OFFICIAL U.S. COURT REPORTER:    MS. TONIA M. HARRIS, RPR
21                                    United States District Court
                                      401 Courthouse Square
22                                    Tenth Floor
                                      Alexandria, VA 22314
23

24

25

—————United States v. E. Martinez—————

2

1              **P R O C E E D I N G S**

2  (Court proceedings commenced at 11:32 a.m.)

3

4              THE COURTROOM CLERK:  Criminal No. 2018-123.  United

5  States of America versus Elmer Zelaya Martinez.

6              Counsel, please note your appearance for the record.

7              THE COURT:  Ms. Tinsley, hold him up while -- yeah.

8              (A pause in the proceedings.)

9              THE COURT:  Okay.

10             MR. LEIVA:  Good morning, Your Honor.

11             THE COURT:  Good morning, sir.

12             (Interpreter sworn.)

13             THE INTERPRETER:  Maria Horvath, federally certified

14  Spanish interpreter.

15             THE COURT:  Good morning, ma'am.

16             Let the record reflect that Mr. Blanchard is present

17  for the government.  Mr. Manuel Leiva is present for Mr. Elmer

18  Zelaya Martinez.  Mr. Elmer Zelaya Martinez is also present.

19             Mr. Zelaya Martinez, as usual, if at any time the

20  equipment that we're providing to you does not work properly

21  just let us know, let Mr. Leiva know, and we'll do what we can

22  to accommodate you, sir.

23             Are you having any difficulty understanding the

24  translation at this point, sir?

25             THE DEFENDANT:  (In English) No.

—Tonia M. Harris OCR-USDC/EDVA 703-646-1438—

EASTERN DISTRICT OF VIRGINIA

———United States v. E. Martinez———

3

1          THE COURT:  Very good, sir.

2          Are there any corrections, deletions, or

3 modifications to the presentence report in this matter?

4          MR. BLANCHARD:  No, Your Honor.

5          THE COURT:  Ms. Stam is also present for the

6 government.  The plexiglass blocked me from seeing her.

7          MS. STAM:  Good morning, Your Honor.

8          THE COURT:  Good morning, ma'am.

9          Any corrections, deletions, or modifications --

10          MR. LEIVA:  Your Honor, good morning, sir.  Yes,

11 just a small change that we missed on page 20.

12          THE COURT:  Yes, sir.

13          MR. LEIVA:  Paragraph 106 where it lists Mr. Zelaya

14 Martinez's son as Elmer.  His middle name starts with a J

15 instead of a Y.

16          THE COURT:  Okay.

17          MR. LEIVA:  Only correction, Your Honor.

18          THE COURT:  That slight modification will be made to

19 the record based on the representation of counsel.

20          Is there any evidence from the government?

21          MR. BLANCHARD:  No evidence, Your Honor.

22          THE COURT:  Any evidence, Mr. Leiva?

23          MR. LEIVA:  No, Your Honor.

24          THE COURT:  All right.  I'll hear from the

25 government on argument.

─────────────United States v. E. Martinez─────────────

4

1           MR. BLANCHARD:  Your Honor, thank you.

2           This is the 14th time that the government has come

3     before the Court for a sentencing in connection with this

4     case.  The facts and tragedy of which are especially

5     well-known to the Court.

6           Of course each defendant who has appeared before

7     Your Honor to answer for participating in the murders of Edvin

8     and Sergio is different, and notwithstanding the mandatory

9     life sentences that the Court has been obligated to impose on

10    the vast majority of those defendants, each is entitled to and

11    has received individualized consideration.

12          Today, the Court must determine what constitutes

13    just punishment for the defendant, Elmer Zelaya Martinez.  Of

14    all the people who contributed to Edvin's and Sergio's

15    untimely and gruesome deaths, the defendant is, in the

16    government's view, the most culpable.

17          When he played a leading role in conceiving,

18    planning, and executing the murders of the two teenaged

19    victims, the defendant was a grown man.  Of those who started

20    the fatal attacks of Edvin and Sergio, the defendant was the

21    oldest and the largest.  Indeed he stood approximately half a

22    foot taller than the victims.  And in the case of Sergio

23    weighed nearly twice as much.

24          In August and September of 2016, when he should have

25    been taking care of his own children, the defendant lured and

───United States v. E. Martinez───

5

1    butchered Edvin and Sergio.  And for what?  What was the

2    purpose of snuffing out the lives of those boys on the

3    defendants' rationales?

4         So that the defendant could climb the ladder and

5    become the first word of his clique of MS-13.  A gang, as the

6    Court well knows, seems to perpetrate violence for violence

7    sake alone.  In this case, the defendant underscored his

8    inequity in the aftermath of both murders, bragging and

9    boasting about his crimes.

10        I can only assume that the United States indignation

11   means nothing to the defendant and I expect that when he's

12   afforded an opportunity to allocute in a few moments the

13   defendant, on the advice of counsel, will say nothing of

14   substance, if he speaks at all.  That is his right.  He might

15   not be obligated to utter any words but he can listen to them.

16        The defendant should hear directly from the victims'

17   family members who regrettably cannot be here today to address

18   him directly.  In a statement submitted to the Court one of

19   Edvin's family members wrote "I want justice, justice.  I have

20   a pain so big in my heart, an emptiness, a sadness, and a hate

21   that is so profound in my heart."

22        Sergio's mother, Carla, also submitted a statement

23   and excerpts of which with the Court's indulgence, I'd like to

24   read.  She wrote in part, "Everything began with hope, faith,

25   and a lot of excitement about leaving my country, Honduras, to

—United States v. E. Martinez—

6

 1   leave behind the suffering we came here with the hope of

 2   starting over.

 3         Sergio was a boy full of love with his family.  He

 4   was very affectionate and was always laughing about

 5   everything.  He had many dreams he was unable to accomplish

 6   because they were taken from him just as he was starting to

 7   live.  My life and my two-year-old daughter's life changed

 8   completely after September 26, 2016, at 8:00 p.m. when Sergio

 9   went out to throw out the trash and never returned.  That day

10   was a Monday and he was with me all day.  He accompanied me to

11   my five-month prenatal checkup for my pregnancy and was happy

12   wishing for a male brother who he could show how to play

13   soccer.  He was a good boy who made mistakes as an adolescent

14   but he dreamt about good things.  When one day my son never

15   returned, my anguish was big and I reported him missing.  But

16   my weight and anguish was prolonged for seven hard months.  I

17   would miss days of work looking for my son.  My days became

18   long and that's without the months I spent without sleeping

19   with so much anguish where I almost lost my baby.  But I did

20   not lose the hope of finding him one day and for him to tell

21   me:  Mommy, I am fine and I am here at home.

22         The detectives called me asking if they could come

23   to my home on April 7, 2017.  They gave me the terrible news

24   that my son, Sergio, had died.  My world fell apart and

25   multiplied into pieces after thinking my son was never going

United States v. E. Martinez

7

1    to return and not knowing what I was going to tell my daughter

2    when she asked for her brother.  The hardest part was asking

3    where he was.  Where he was found.  And knowing that I'd never

4    see him again being dead as a result of the terrible and

5    atrocious death given to him by those people without a soul

6    and scruples.

7            I know that Sergio will not return but at least

8    there will be justice on his behalf for all the suffering that

9    they caused him.  Even with that, they still can't pay for the

10   suffering they have caused my daughter, who still waits for

11   him while looking out the window and asking why her brother

12   left and left us.

13           In the end, Your Honor, the applicable statutes

14   require that the defendant spend the rest of his life in

15   prison.  But here, that outcome is equally compelled by

16   justice.  Justice for Edvin, justice for Sergio, and justice

17   for their families.  Thank you.

18           THE COURT:  Thank you, sir.  Mr. Leiva.

19           MR. LEIVA:  May it please the Court, Your Honor.

20   Your Honor, these sentencings here on these types of cases are

21   always difficult.  Because the statutes do mandate a life

22   sentence for my client.  Counsel started off with asking the

23   Court for just punishment and after doing several of these

24   cases it's become clear to me that it's really in the eye of

25   the beholder of what is just punishment.  And I'll give an

─────────────── United States v. E. Martinez ───────────────

8

1    example in this case.

2              In this case, we had the co-defendant, Ronald

3    Herrera, who was debriefed by the government at least 8 or 10

4    times and took the government to the bodies.  He hasn't been

5    sentenced to life.  Whereas you have Vijel, who, as the Court

6    remembers, was Horror and held a leadership position in this

7    clique, who took his pregnant girlfriend, 15-year old pregnant

8    girlfriend, to one of the murders.  He's going to get out in

9    20 or 30 years.  And I'm sure Your Honor has seen multiple

10   cases where that is the case as well that sometimes the most

11   culpable get to be free some day, whereas the lower-ranking

12   members don't.

13             In this case, Your Honor, you heard evidence about

14   Moris Castro.  He was the young man that started the rumor

15   about Sergio which led to other members of the clique

16   believing that Sergio had cooperated with the police.  And you

17   heard from Morris's own mouth saying that he started that to

18   deflect any attention on him because he was in fact

19   cooperating with the police.  And what was striking about

20   Moris Castro, Your Honor, is that even though he started these

21   false rumors, which led to the death of his friend, he

22   actually even participated knowing that he started these false

23   rumors.  And Moris Castro will not be facing life either, Your

24   Honor.

25             These young men who decide to enter into this world

United States v. E. Martinez

9

1   they follow this code that's imposed upon them by the gang.

2   And for whatever reason they believe that that's the code that

3   they must follow.  And unfortunately following that code leads

4   them here.  Leads them to a court, leads them to be sentenced,

5   and leads that their young lives are extinguished.  My client

6   knows that he will die in prison, he knows that he will never

7   be able to hold his two children.  And some day I hope that

8   the powers that be fund programs which help young men not join

9   gangs.  I think all of us who do this understand what causes

10  them to join gangs.

11          THE COURT:  And if I could ask you a question here,

12  Mr. Leiva, because, as Mr. Blanchard pointed out, I've had

13  more than ten individuals who are implicated in these actions

14  appear before the Court in various stages of sentencing and

15  the like.

16          And I might be wrong on this, but I think I'm not.

17  All of them, every single one of them had some, shall we say,

18  family dysfunction in El Salvador which contributed to them

19  maybe going down this path.  But as I read the report

20  involving Mr. Zelaya Martinez, it doesn't appear that he had

21  those same challenges, that he came from "a good family."  I'm

22  using that in air quotes, obviously.  That he had a mother and

23  a father who were there to support him.  That he had some

24  skills and some abilities and didn't have to suffer some of

25  the difficulties that other young men from El Salvador,

———United States v. E. Martinez———

10

1   transplanted to the United States, had to suffer, but yet and

2   still he ended up in these circumstances.  So the situation is

3   very different.  And if I'm wrong on what I'm saying, correct

4   me.

5          MR. LEIVA:  I would say, Your Honor, there's a

6   spectrum and I think the Court can take into consideration

7   that with his particular family, you have two young men who

8   participated or allegedly participated --

9          THE COURT:  Henry and Elmer, yeah.

10          MR. LEIVA:  Yes.  And I think the Court can deduce

11   from that certain information.

12          THE COURT:  But I think in the record as we

13   conducted Henry's sentencing it was clear that Henry did

14   not -- had more challenges personally, I'll just say it that

15   way, than Elmer did.

16          MR. LEIVA:  I won't say I agree with that because

17   again I wasn't privy to some of those discussions.

18          THE COURT:  I'm not misrepresenting that.

19          MR. LEIVA:  No, I'm not suggesting that you are,

20   Your Honor.  What's difficult about these cases as well, Your

21   Honor, is that when you have -- and I'll use the word

22   "indoctrinated" with some of this code or this -- rules that

23   are imposed on them by the gang, they're also very careful

24   with what they disclose.  My experience has been that -- and

25   this is not related to Elmer.  My experience has been that

─────────────── United States v. E. Martinez ───────────────
11

1   when you represent young men, especially in this particular

2   gang, they are thinking two to three steps ahead of you, as

3   far as what is my life going to be like once I am sentenced.

4   Am I going to be able to walk into that prison with my, for

5   lack of a better term, my head held up high.

6            And it's very difficult doing these kind of cases

7   because you have to win the trust of your client, and

8   sometimes convince them that being vulnerable or opening up to

9   you is to their benefit when everything up to that point,

10  which has led them to there, suggests otherwise.

11           THE COURT:  And Mr. Leiva, you are in a unique

12  situation and the Court appreciates the unique situation that

13  you hold and that you're able to speak the language, that you

14  understand the culture, and I think to be fair it has to be

15  pointed out that the hard work that you and Mr. Jenkins put in

16  to deauthorize the seeking of the death penalty in this case

17  is significant.  And if you haven't gained trust through those

18  Herculean efforts, I don't know if you can ever get any trust.

19  This young men was facing the possibility of the death

20  sentence and you all, through your hard work, were able to

21  lobby the United States Attorney's Office, or excuse me, the

22  Attorney General's Office to seek a circumstance where your

23  client was not facing the death penalty.  And that is an

24  incredible feat in cases such as this and you are to be

25  applauded for that.  And if Mr. Elmer Zelaya Martinez doesn't

United States v. E. Martinez

12

1  trust you now, then he's never going to trust you.

2          MR. LEIVA:  Well, again, Your Honor, there's

3  different levels, right.  And again, I guess the point I'm

4  trying to make, Your Honor, is that certain things I think

5  that young men who are involved in gangs wish they could say

6  to us are not said to us because in the end they know that

7  they have to face those same gang members.  And unfortunately,

8  there's this code of conduct, let's say.  And it makes it

9  difficult sometimes.

10          THE COURT:  I get it.

11          MR. LEIVA:  But I will tell Your Honor that

12  Mr. Zelaya Martinez did read the letters provided by the

13  family members of the victims.  He did view every photo, and

14  that, at least to me, was important.  Very rarely do I have

15  clients who, one, review those letters.  They usually ask me

16  can you just summarize what they said, but he actually took

17  the time and effort to read those letters and look at the

18  pictures.  And as Your Honor knows from the presentence

19  investigation, some of those photographs were these young men,

20  the victims, when they were young.  I'm sure that had an

21  impact on Mr. Zelaya Martinez given that he's a father of two

22  young children as well.  But as I said, Your Honor, this is a

23  difficult case.

24          THE COURT:  I understand, sir.

25          MR. LEIVA:  Thank you, Your Honor.

—————United States v. E. Martinez—————

13

1          THE COURT:  Thank you, sir.

2          Mr. Zelaya Martinez, you may stand, sir.  I'm sure

3    your counsel has advised you as to the circumstances that

4    you're facing as far as saying anything in open court and I'm

5    not requiring you to say anything, but if you would like to

6    say something to me, as far as your sentencing is concerned,

7    I'll be more than happy to hear it, sir.

8          THE DEFENDANT:  No.

9          THE COURT:  All right, sir, that is your right.  You

10   may have a seat, sir.

11         Under the sentencing guidelines, the base offense

12   level is 43.  Because the defendant was an organizer or a

13   leader of a criminal activity that involved five or more

14   participants or was otherwise extensive, four levels are added

15   pursuant to the guidelines.

16         Pursuant to Chapter 5, part A, comment note 2 of the

17   guidelines, in those rare instances where the offense level is

18   calculated in excess of 43, the offense level will be treated

19   as a Level 43.  Therefore, the defendant's criminal offense

20   level is 43.  The criminal history score is 1 and the criminal

21   history category is Roman Numeral 1.  Accordingly, the

22   applicable guideline range is life imprisonment.  The

23   supervised release range is three to five years under the

24   guidelines.  The fine range is $50,000 to $250,000.  Pursuant

25   to 18 U.S.C. Section 3553(a), the Court should consider the

—————United States v. E. Martinez—————

14

1    following:

2         The nature and circumstances of the offense, and the

3    history and characteristics of the defendant, the need for the

4    sentence imposed to, among other things, reflect the

5    seriousness of the offense and adequately deter criminal

6    conduct, the kinds of sentences available, the guidelines,

7    policy statements issued by the Sentencing Commission, the

8    need to avoid unwarranted sentence disparities among

9    defendants with similar records found guilty of similar

10   conduct.  And finally, the need to provide restitution to the

11   victims of the offense.  Ultimately, under the *Booker*

12   standard, the sentence must meet a standard of reasonableness.

13        With regard to the Section 3553(a) factors, the

14   history and characteristics of the defendant, the Court has

15   considered defendant's personal background and some of the

16   difficulties he may have encountered.  As for the nature and

17   circumstances of the offense, suffice it to say that murder is

18   a reprehensible crime.  A jury found that the defendant

19   committed the murders of Edvin Mendez and Sergio Triminio and

20   the evidence attests to the severity of the defendant's crime.

21        The defendant, as represented by the government, can

22   in many respects, be viewed as a leader and organizer of these

23   crimes.  He wielded his power and influence within the gang to

24   commit terrible crimes and spurred others to do the same.  He

25   chose to commit himself to criminal activity and his choices

─────United States v. E. Martinez─────

15

1    took the lives of others.  These horrible offenses,

2    particularly in light of the manner in which the defendant and

3    his co-conspirators carried them out, as found by the jury,

4    warrants a sentence of life imprisonment.

5            The Court considers next the need for the sentence

6    imposed to reflect the seriousness of the offense, to promote

7    respect for the law, and to provide just punishment for the

8    offense, to afford adequate deterrence to criminal conduct, to

9    protect the public from further crimes of the defendant, and

10   to provide the defendant with needed educational or vocational

11   training, medical care, or other correctional treatment in the

12   most effective manner.

13           Applying these factors to the case, the Court finds

14   that a sentence of life imprisonment sufficiently reflects the

15   seriousness of the defendant's offense and will promote both

16   specific and general deterrence.  As indicated earlier, the

17   guideline range for such an offense is life imprisonment.  A

18   sentence of life imprisonment on Counts 3 through 8 will not

19   create unwarranted sentencing disparities.  The sentence is

20   also consistent with the sentence imposed for other defendants

21   who have committed similar offenses including co-defendants:

22   Henry Zelaya Martinez and Duglas Ramirez Ferrera.

23           Accordingly, on Counts 1 and 2, conspiracy to commit

24   kidnapping and murder, the Court imposes a term of 120 months

25   on each count which shall run concurrently.

United States v. E. Martinez

16

1        On Counts 3 through 8, the Court imposes a term of

2   life imprisonment on each count, which shall also run

3   concurrently.

4        While the Court understands the defendant requests a

5   term of years rather than life imprisonment, in exercising the

6   Court's discretion in these circumstances as to Counts 5

7   through 8, the Court finds that applying Section 3553(a)

8   factors to defendant's offense indeed warrants a sentence of

9   life imprisonment on Counts 3 and 4 as well.

10       The Court also imposes a period of supervised

11  release to provide adequate measures of deterrence and

12  protection based on the factors and circumstances of this

13  particular case, again, consistent with the guidelines.

14       Should the defendant ever be released from

15  incarceration, he will serve a five-year term of supervised

16  release representing years as to Counts 1 and 2; and 5 years

17  as to Counts 3 through 8.  Again, all to run concurrently.

18       During his period of supervised release, the

19  defendant must comply with the standard conditions of

20  probation as have been adopted by the Court.  The defendant

21  shall be surrendered to a duly authorized immigration official

22  of the Department of Homeland Security for a deportation

23  review in accordance with established procedures provided by

24  the Immigration and Nationality Act.

25       As a further condition of supervised release --

United States v. E. Martinez

17

1          (A pause in the proceedings.)

2          THE COURT:  As a further condition of supervised

3    release, if ordered, the defendant shall remain outside the

4    United States of America.

5          If the defendant tests positive for a controlled

6    substance or shows signs of alcohol abuse, the defendant shall

7    participate in a program approved by the United States

8    Probation Office for substance abuse which program may include

9    residential treatment and testing to determine whether the

10   defendant has reverted to the use of drugs or alcohol with

11   partial costs to be paid by the defendant, all as directed by

12   the probation office.

13         The defendant shall not use marijuana or cannabis in

14   any form.  The defendant shall not use marijuana or cannabis

15   in any form and shall participate in a program approved by the

16   United States Probation Office for mental health treatment.

17   The cost of this program is to be paid by the defendant again

18   as directed by the probation office.

19         Recognizing that the defendant is likely not capable

20   of paying a fine, the Court will not impose a fine.  The Court

21   will impose a special assessment pursuant to statute of $800,

22   $100 per felony count.  The government has sought in other

23   matters restitution on behalf of the victims in this case and

24   has proposed a date of November 25th -- excuse me,

25   November 28th to provide the restitution.  If the government

─────United States v. E. Martinez─────

18

1    fails in its obligation, the Court will not order restitution.

2         The defendant is advised that he may appeal any

3    portion of this sentence to the appropriate Court.

4         Mr. Leiva, are you going to take on the appeal?

5         MR. LEIVA:  No, Your Honor.  Mr. Jenkins will.

6         THE COURT:  Mr. Jenkins.  Well, the Court will

7    appoint Mr. Robert Jenkins to pursue any appeal rights the

8    defendant may wish to pursue.  In addition to that, Mr. Leiva,

9    I'm going to direct that you and Mr. Jenkins advise Mr. Zelaya

10   Martinez of any appeal rights that he may have pursuant to the

11   constitution.

12        Mr. Zelaya Martinez, your lawyers have worked very

13   hard for you on this case.  Mr. Jenkins and Mr. Leiva are both

14   well-respected practitioners in this Court and they work hard

15   on behalf of their clients.  And you may have heard me mention

16   earlier that they worked hard outside of this courtroom to

17   make sure that you were not facing the death penalty and they

18   are to be applauded for their efforts.

19        And so, I'm going to ask you, sir, have you always

20   been entirely satisfied with the services of the attorneys

21   that have been appointed to you by this Court?

22        THE DEFENDANT:  (In English.)  Yes, sir.

23        THE COURT:  Very good, sir.

24        MR. BLANCHARD:  Your Honor, on that note.  Out of an

25   abundance of caution, would the Court inquire of the defendant

────United States v. E. Martinez────

19

1    whether he has any objection to proceeding to his appeal with

2    just one attorney given his current right to.

3                THE COURT:  Sure.

4                Mr. Zelaya Martinez, at one point you had three

5    lawyers representing you.  And then when the death penalty was

6    taken off the table Mr. Jenkins and Mr. Leiva were left with

7    the responsibility of representing you.  Now that your case is

8    going on appeal, appeal is more of a written thing and arguing

9    before a Court, and typically people do not have two attorneys

10   working on that.  And Mr. Jenkins has indicated that he is

11   willing and able, very able, to take on the appeal for you by

12   himself.

13               Are you comfortable with that, sir?

14               MR. LEIVA:  Yes, sir.

15               THE COURT:  Very good, sir.  Thank you for that.

16               Anything else we need to do?

17               MR. LEIVA:  Your Honor, to the extent the Court can

18   make a recommendation, Mr. Zelaya is asking if he could be

19   sent to a facility close to this area, Your Honor.  Just so

20   his family can --

21               THE COURT:  Where is his family?

22               MR. LEIVA:  Here, Your Honor, in Alexandria,

23   Virginia.

24               THE COURT:  Okay.  If you have a specific facility

25   that you would like me to recommend to the Bureau of Prisons,

United States v. E. Martinez

20

1   I'd be more than happy to consider it.  Typically if I say

2   something close to his family members in the Washington, D.C.

3   metropolitan area that could extend to almost anywhere.  So if

4   you have somewhere specifically that you would like me to

5   recommend.

6           MR. LEIVA:  I do not, Your Honor.  But I perhaps can

7   send something to the Court.

8           THE COURT:  Okay.  That's fine.  Because we're

9   keeping it open essentially to November 28, 2022, in any event

10  for the issue of restitution.  So if you can get to me a

11  recommended facility prior to that, the Court will do what it

12  can to accommodate that request.

13          MR. LEIVA:  Thank you, sir.

14          THE COURT:  All right.  Mr. Zelaya Martinez,

15  anything else from you, sir?

16          THE DEFENDANT:  No.

17          THE COURT:  I remand you to the custody of the

18  United States Marshals.

19          MR. LEIVA:  Thank you, Your Honor.

20          THE COURT:  Well presented, Counsel.  Thank you.

21

22          **(Proceedings adjourned at 12:01 p.m.)**

23

24

25

EASTERN DISTRICT OF VIRGINIA

1                    CERTIFICATE OF REPORTER

2

3           I, Tonia Harris, an Official Court Reporter for

4    the Eastern District of Virginia, do hereby certify that I

5    reported by machine shorthand, in my official capacity, the

6    proceedings had and testimony adduced upon the Sentencing

7    hearing in the case of the **UNITED STATES OF AMERICA versus**

8    **ELMER ZELAYA MARTINEZ**, Criminal Action No.:

9    1:18-cr-123-RDA-4, in said court on the 2nd day of

10   November, 2022.

11          I further certify that the foregoing 21 pages

12   constitute the official transcript of said proceedings, as

13   taken from my machine shorthand notes, my computer realtime

14   display, together with the backup tape recording of said

15   proceedings to the best of my ability.

16          In witness whereof, I have hereto subscribed my

17   name, this September 28, 2023.

18

19

20

21   _____
     Tonia M. Harris, RPR
22   Official Court Reporter

23

24

25

                                                              21